STATE OF NORTH CAROLINA v. JAMES LOUIS MITCHELL

No. 87

(Filed 1 June 1973)

1. Criminal Law § 15— newspaper publicity — motion for change of venue denied — no error

Defendant failed to show an abuse of discretion by the trial judge in denying his motion for a change of venue or for a special venire from another county based on publicity from three newspaper articles reporting what transpired at defendant's first trial where his motion for mistrial was granted, since defendant did not show that any prospective juror had read the newspaper articles or had seen or heard any other news releases pertaining to the cases which would influence him against defendant.

2. Criminal Law § 43— photographs — method of jury observation proper

Where the State introduced into evidence eleven photographs including one of defendant which had been submitted to the victim in a rape and kidnapping case, there was no error in allowing the jury to examine defendant's photograph alone before seeing the other ten photographs, particularly where the court gave the jurors an opportunity to view all eleven photographs at once, but no juror took advantage of the opportunity.

3. Criminal Law § 51— opinion testimony — test for determining admissibility

The essential question in determining the admissibility of opinion evidence is whether the witness, through study or experience, has acquired such skill that he is better qualified than the jury to form an opinion on the subject matter to which his testimony applies.

4. Criminal Law § 51— opinion testimony as to fingerprints — qualifications of witness

Trial court did not err in allowing a State's witness to testify as to his opinion respecting fingerprint comparisons, though the witness had neither been tendered as nor found to be an expert, where there was evidence tending to show that the witness had 22 years of experience in police identification work, including fingerprint identification, had supervised five other identification technicians, had attended training sessions and had read identification manuals, had compared over ten thousand fingerprints and had testified on numerous occasions as an expert witness in fingerprint identification.

5. Criminal Law § 78— stipulation — proof of facts unnecessary

Trial court's instruction that facts in a stipulation between solicitor and defense counsel were to be taken as true and were not to be debated by the jury was proper.

6. Criminal Law § 122— recall of jury for further instruction — application of law to facts — no error

Where the jury in a rape case requested further instructions with respect to a stipulation entered by the solicitor and defense counsel,

received them and retired, but the court on its own initiative there-after sent for the jury to return for an instruction that the stipulated fact, the presence of sperm in the vagina of the prosecuting witness, was not an element of proof in the crime alleged to have been committed, the court was correctly stating the law relating to a fact relevant to the case about which the jury had expressed a need for clarification.

7. **Criminal Law §§ 138, 140; Constitutional Law § 36— two consecutive life sentences — no cruel and unusual punishment.**

Imposition of a life sentence on a rape charge, a life sentence on a kidnapping charge, a ten-year sentence on a common law robbery charge and a ten-year sentence on a crime against nature charge, all the sentences to run consecutively, did not constitute cruel and unusual punishment since each sentence was within statutory limits and consecutive life sentences have been specifically approved by the Supreme Court.

APPEAL from *Godwin, S.J.,* at the 27 November 1972 Criminal Session of WAKE Superior Court.

On 3 September 1972 the defendant, James Louis Mitchell, was indicted in separate bills of indictment, proper in form, for four offenses: (1) rape, (2) kidnapping, (3) common law robbery, and (4) crime against nature. On 24 October 1972 trial was begun on these indictments before Judge Canaday and a jury in Wake Superior Court. During the trial Judge Canaday, on motion of defendant, ordered a mistrial because of improper statements made by the solicitor in the presence of the jury.

On 6 November 1972 the defendant filed a motion for a change of venue for the reason that publicity during the first trial made a fair trial in Wake County impossible. On 6 November 1972 Judge Brewer found as a fact that the defendant could receive a fair trial in Wake County and denied this motion.

Defendant was tried at the 27 November 1972 Criminal Session of Wake Superior Court for the four offenses charged in the 3 September 1972 bills of indictment. The evidence for the State tends to show: On 13 July 1972 Mrs. Cynthia Y. Wortham was working as a nursing assistant at Wake Memorial Hospital. At 11:20 p.m. Mrs. Wortham got off from work and started walking to her car parked near the hospital. While going to her car, she noticed someone walking beside her but assumed he was another employee leaving work. When she

reached her car, the man who had been walking beside her ran up and grabbed her. Mrs. Wortham identified this man as the defendant, James Mitchell. Defendant then forced Mrs. Wortham to get into her car and lie down on the passenger side while he drove the car. Coming out of the hospital parking lot, she attempted to grab the steering wheel. The defendant struck her in the face, pulled her hair and told her that if she did not cooperate, he would kill her.

Defendant drove Mrs. Wortham's car into a dirt road adjacent to a construction site and parked the car. Defendant then had intercourse with Mrs. Wortham by force and without her consent. Upon completion of the first act of intercourse, defendant compelled her to engage in an act of sexual intercourse *per anum*. After this act was concluded, defendant drove back to the hospital where he forced Mrs. Wortham to get into the trunk of the car. Defendant left, got his own car and drove it to a point close to Mrs. Wortham's car. He then let her out of the trunk and demanded that she give him any money that she had. She gave him $7 and he left.

Mrs. Wortham immediately went to her parents' home and called the police. She was taken to Wake Memorial Hospital and examined by Dr. D. L. Jones. Her clothing was disheveled and soiled, she had a redness of her right cheek, three separate abrasions of her left elbow, a small cut on her lower lip, a bruise on her medial left breast, and a small cut at the opening of the female genitalia.

A latent fingerprint and a palm print taken from the inside of Mrs. Wortham's car matched defendant's finger and palm prints.

Defendant offered the testimony of his wife and mother-in-law who saw defendant on the night in question prior to the commission of the alleged crimes. Their testimony tends to contradict Mrs. Wortham concerning the clothing worn by defendant on that night. Defendant did not testify.

The jury returned verdicts of guilty of rape, kidnapping, common law robbery and crime against nature. From judgments imposing prison sentences, defendant appealed. Pursuant to G.S. 7A-31(a), we allowed defendant's motion to certify the common law robbery and the crime against nature cases for review by this Court prior to determination by the Court of Appeals.

*Attorney General Robert Morgan and Assistant Attorneys General Eugene Hafer and Donald A. Davis for the State.*

*Roger W. Smith of Tharrington, Smith & Hargrove for defendant appellant.*

MOORE, Justice.

[1] Defendant first assigns as error the trial court's failure to allow defendant's motion for a change in venue or, in the alternative, for a special venire from another county. G.S. 1-84; G.S. 9-12.

The motion is supported by an affidavit of defendant's attorney which states that because of publicity received as a result of the mistrial granted in the first trial defendant could not receive a fair and impartial trial. In addition, defendant offered as exhibits three newspaper articles, two of which were published in the News and Observer on page 5 and on page 50 on October 26 and October 27, 1972, respectively, and the other of which appeared in the Raleigh Times on October 27, 1972. These articles were a factual report of what transpired at the first trial when the motion for mistrial was allowed. The record does not indicate that any prospective juror had read the newspaper articles or had seen or heard any other news releases pertaining to these cases. Nothing in the record shows that any juror had been influenced in any manner by this publicity.

In *State v. Allen,* 222 N.C. 145, 22 S.E. 2d 233 (1942), a murder case in which this Court held that the defendant's motion for a change of venue based upon newspaper articles was in the discretion of the trial court, Justice Denny (later Chief Justice) said:

" . . . A motion for change of venue or for a special venire, may be granted or denied in the discretion of the trial judge, and his decision in the exercise of such discretion is not reviewable here unless gross abuse is shown. . . . "

To prevail on this assignment, defendant would have to show an abuse of discretion. *State v. Blackmon,* 280 N.C. 42, 185 S.E. 2d 123 (1971); *State v. Brinson,* 277 N.C. 286, 177 S.E. 2d 398 (1970); *State v. Porth,* 269 N.C. 329, 153 S.E. 2d 10 (1966); *State v. Scales,* 242 N.C. 400, 87 S.E. 2d 916 (1955). No such abuse of discretion has been shown. This assignment is overruled.

State v. Mitchell

[2] The prosecuting witness Cynthia Wortham testified that at the request of Detective R. B. Tant she viewed ten or fifteen photographs and from those she selected the photograph of the person who assaulted her. Detective Tant testified that the group of eleven pictures marked as State's Exhibit 4 were the photographs from which Mrs. Wortham selected the photograph of the person who assaulted her. All the photographs, including that of defendant, were introduced in evidence. The solicitor then requested permission of the court to hand defendant's photograph to the jury. Defendant objected and requested that all the photographs be passed at one time. This objection was overruled, and the photograph which had been identified as that of defendant was given to the jury; thereafter the remaining ten photographs were passed to the jury.

Defendant in his brief, citing *State v. Miller,* 219 N.C. 514, 14 S.E. 2d 522 (1941), admits it was proper to allow the jury to see the photographs, but contends that all the photographs should have been passed to the jury at the same time so the jurors could get an accurate view of the appearance of the photograph selected as being that of the defendant as compared to the appearance of the other photographs. As a result of defendant's objection, the trial judge stated to the jury:

> "You have been permitted to see these photographs because they have been introduced in evidence by the State in order that you may see the entire eleven photographs which were exhibited or which the evidence now tends to show were exhibited to Mrs. Wortham. If any one of you would like to look at all eleven photographs at the same time you may do so. If you will just hold up your hands, I will have all eleven of them handed back to you so you may view all of them at the same time."

No juror requested to see all the photographs at one time. This assignment is without merit.

Defendant next contends that the court erred when, over objection, the witness W. M. Parker was allowed to testify as to his opinion respecting fingerprint comparisons when the witness had been neither tendered as nor found to be an expert.

In *State v. Perry,* 275 N.C. 565, 169 S.E. 2d 839 (1969), there was an assignment of error based on the failure of the trial court to make a finding that a doctor was an expert and qualified to give an opinion regarding recent sexual intercourse

by the prosecuting witness in a rape trial. In the opinion Justice Lake pointed out that the better practice is for the solicitor to formally tender the witness as an expert and for the trial judge so to rule in a formal manner. However, the assignment of error was overruled, and Justice Lake stated:

> "In the absence of a request by the appellant for a finding by the trial court as to the qualification of a witness as an expert, it is not essential that the record show an express finding on this matter, the finding, one way or the other, being deemed implicit in the ruling admitting or rejecting the opinion testimony of the witness. . . . "

*Accord, State v. DeMai,* 227 N.C. 657, 44 S.E. 2d 218 (1947).

[3, 4] In the present case Parker had just testified that he had twenty-two years' experience in police identification work, including fingerprint identification; had supervised five other identification technicians; had attended training sessions and had read identification manuals; had compared over ten thousand fingerprints; and had testified on numerous occasions as an expert witness in fingerprint identification. As in *State v. Perry, supra,* defendant did not request a finding by the trial court concerning Parker's qualifications as an expert. The essential question in determining the admissibility of opinion evidence is whether the witness, through study or experience, has acquired such skill that he is better qualified than the jury to form an opinion on the subject matter to which his testimony applies. *State v. Hairston* and *State v. Howard* and *State v. McIntyre,* 280 N.C. 220, 185 S.E. 2d 633 (1972); *Cogdill v. Highway Commission* and *Westfeldt v. Highway Commission,* 279 N.C. 313, 182 S.E. 2d 373 (1971); *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755 (1971); 1 Stansbury, North Carolina Evidence (Brandis Rev.) § 133, p. 431. The evidence in the present case clearly indicates that the witness Parker through both study and experience had acquired such skill. This assignment is overruled.

[5] At the close of the State's evidence the court informed the jury that the solicitor for the State and counsel for defendant had entered into a stipulation:

> "They have stipulated that Dr. Dewey Pate examined the slides of smears taken by Dr. Jones from the vagina of Cynthia Wortham on July 14, 1972, and that the examina-

tion revealed the presence of sperm, but Dr. Pate could not tell when the sperm were deposited in 'her vagina. They could have been deposited there at anytime between one hour and two weeks earlier."

After the jury retired and deliberated for some period of time, they returned and the following occurred:

"FOREMAN: Your Honor, we have a couple of questions on some of the testimony. We are somewhat in doubt of the results of the pathologist test on the lab smears and we wonder if we could have that area re-read, and did the consentment between the prosecutor and defense —

"COURT: The what?

"FOREMAN: The consentment between the two gentlemen have any relation —

"COURT: I think I know what you are talking about. I told you the solicitor for the State and counsel for the defendant had made a stipulation and an agreement and that you should accept that for the truth.

"You are required to accept that stipulation as the truth. You may not debate about it.

EXCEPTION

EXCEPTION No. 15.

"I will read it to you.

"FOREMAN: Yes, sir.

"COURT: The solicitor for the State and the defendant through his attorney have agreed that it is true and you will therefore accord to their agreement the characteristics of truth.

"You must accept as true this statement: That Dr. Dewey Pate examined the slides of smears taken by Dr. Jones from the vagina of Cynthia Wortham on July 14, 1972, and that the examination revealed the presence of sperm, but that Dr. Pate could not tell when the sperm were deposited in her vagina. They could have been deposited there at any time between an hour and two weeks earlier than the time the smears were taken.

State v. Mitchell

EXCEPTION

EXCEPTION No. 16.

"Now, that is a matter you may not debate about.

EXCEPTION

EXCEPTION No. 17

"If any person on the jury would like me to read it over to you again, I will be glad to do so."

Defendant contends the court erred in instructing the jury that they must accept that stipulation as the truth and that they could not debate about it.

No proof of stipulated facts is required. The stipulation is substituted for proof and dispenses with the need for evidence. In *State v. McWilliams*, 277 N.C. 680, 178 S.E. 2d 476 (1970), the defendant had stipulated the death of Bloss Manning was caused by a blow to the head. Evidence at the trial indicated that defendant struck a blow upon Manning's head. Justice Huskins for the Court stated:

" . . . A stipulation of fact is an adequate substitute for proof in both criminal and civil cases. *State v. Powell*, 254 N.C. 231, 118 S.E. 2d 617 (1961). 'Such an admission is not evidence, but rather removes the admitted fact from the field of evidence by formally conceding its existence. It is binding in every sense, preventing the party who makes it from introducing evidence to dispute it, and relieving the opponent of the necessity of producing evidence to establish the admitted fact. In short the subject matter of the admission ceases to be an issue in the case. . . .' Stansbury, North Carolina Evidence (2d Ed. 1963), § 166."

See 2 Stansbury, North Carolina Evidence (Brandis Rev.) § 166, p. 1, and cases therein cited; 83 C.J.S. Stipulations § 12, p. 30. The facts stipulated in the present case ceased to be an issue, and the court correctly stated that they were to be taken as true. This assignment is overruled.

[6] After the court had explained to the jury the effect of the stipulation, the jury retired but soon thereafter the court sent for the jury to return, apologized for the interruption, and explained:

"The questions that you raised and wanted answers to and which the court has undertaken to answer causes the court to wonder whether you have been sufficiently instructed with regard to the reason why a stipulation has been entered into by the parties and also with regard to whether there may be some question in the minds of some of you regarding what sexual intercourse is at law."

The court then proceeded to explain that the stipulation had been entered into by the parties in order to avoid the necessity of bringing the doctor into court to testify. He further explained that the law does not require ejaculation in order to find that there had been, in fact, sexual intercourse. Defendant contends that it was error for the court to volunteer the additional instruction and in so doing the court expressed an opinion with respect to the evidence, which is prohibited by G.S. 1-180.

Upon the trial of any indictment for the offense of rape, it is not necessary to prove emission of seed in order to constitute the offense, but the offense is complete upon proof of penetration only. G.S. 14-23. Thus, when the jury was told that the stipulated fact, the presence of sperm in the vagina of the prosecuting witness, was not an element of proof in the crime alleged to have been committed, the court was correctly stating the law relating to a fact relevant to the case about which the jury had expressed a need for clarification. This assignment is without merit.

[7]  The court imposed a life sentence on the rape charge, a life sentence on the kidnapping charge, a ten-year sentence on the common law robbery charge, and a ten-year sentence on the crime against nature charge, all the sentences to run consecutively. Defendant contends that the court has sentenced him to a term of years which is humanly impossible to fulfill, and that these consecutive sentences constitute cruel and unusual punishment.

In State v. Waddell, 282 N.C. 431, 194 S.E. 2d 19 (1972), the Court held that the only permissible punishment for a rape which occurred after the decision in Furman v. Georgia, 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726 (1972), and prior to 18 January 1973, the date of the Waddell decision, was life imprisonment. The rape for which defendant was convicted in this case occurred on 13 July 1972, after the Furman decision

and before the *Waddell* decision. Hence, the sentence of life imprisonment for rape was proper.

Kidnapping under G.S. 14-39 may be punishable by life imprisonment. *State v. Bruce,* 268 N.C. 174, 150 S.E. 2d 216 (1966); *State v. Barbour,* 278 N.C. 449, 180 S.E. 2d 115 (1971).

Common law robbery may be punishable by ten years' imprisonment. G.S. 14-2; *State v. Stewart,* 255 N.C. 571, 122 S.E. 2d 355 (1961). Crime against nature may be punishable by ten years' imprisonment. G.S. 14-177; *State v. Thompson,* 268 N.C. 447, 150 S.E. 2d 781 (1966).

Therefore, the punishment imposed in each of the present cases was within statutory limits. This Court has consistently held that a sentence of imprisonment which is within the maximum authorized by statute is not cruel or unusual punishment unless the punishment provisions of the statute itself are unconstitutional. *State v. Cradle,* 281 N.C. 198, 188 S.E. 2d 296 (1972); *State v. Rogers,* 275 N.C. 411, 168 S.E. 2d 345 (1969); *State v. Robinson,* 271 N.C. 448, 156 S.E. 2d 854 (1967); *State v. Hilton,* 271 N.C. 456, 156 S.E. 2d 833 (1967); *State v. Bruce, supra.* The Federal rule coincides with the North Carolina rule. In *Martin v. United States,* 317 F. 2d 753 (9th Cir. 1963), defendant was convicted of wilfully failing to file a tax return. Defendant contested the sentence which he received on the ground that it constituted cruel and unusual punishment. The Court said:

"... Since it is well settled that a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment, appellant's contention is without merit. Further, it is clear that this court has no control over a sentence which is within the limits allowed by statute. ..."

*Accord, Page v. United States,* 462 F. 2d 932 (3d Cir. 1972); *Lindsey v. United States,* 332 F. 2d 688 (9th Cir. 1964); *Gallego v. United States,* 276 F. 2d 914 (9th Cir. 1960); *Black v. United States,* 269 F. 2d 38 (9th Cir. 1959).

Consecutive life sentences have been specifically approved by this Court. In *State v. Bruce, supra,* as in the instant case, the defendant was sentenced to life imprisonment for kidnapping to begin at the expiration of a prior life sentence imposed

for the rape of the prosecuting witness during the alleged kidnapping. Chief Justice Parker stated:

". . . The objection here is to the sentence of life imprisonment to run consecutively with a sentence of life imprisonment for rape, and not to the statute of kidnapping under which the sentence in the instant case was imposed. The sentence of life imprisonment for rape before Judge Stevens and the sentence of life imprisonment in the instant case [for kidnapping] to run consecutively with the sentence of life imprisonment for rape do not exceed the limits fixed by the statutes, and the sentence in the instant case is not cruel and unusual punishment in a constitutional sense. . . ."

This assignment of error is overruled.

We have carefully examined each assignment of error brought forward and discussed in defendant's brief and find them to be without merit.

Evidence of defendant's guilt is overwhelming. The jury has returned a verdict of guilty in each case. The sentences imposed do not exceed the limits fixed by the statutes. In the trial, verdicts and judgments we find no error.

No error.