STATE OF NORTH CAROLINA v. MICHAEL TERRY FRANK

No. 67

(Filed 14 November 1973)

1. **Constitutional Law § 30— eight-ten months delay — right to speedy trial not abridged**

   An eight to ten months delay in defendant's trial for first degree burglary and larceny was not unreasonable and was not prejudicial to defendant in preparing and presenting his defense.

2. **Searches and Seizures § 2— consent to search — Miranda warnings not required**

   Warnings required by *Miranda* are inapplicable to searches and seizures, and a search by consent is valid despite failure to give such warnings prior to obtaining consent.

3. **Criminal Law § 84; Searches and Seizures § 2— consent to search — admissibility of evidence seized**

   Consent to search, freely and intelligently given, renders competent the evidence thus obtained; therefore, items of property found in a search of defendant's premises made with his consent were properly admitted into evidence in his trial for first degree burglary and larceny.

4. **Criminal Law §§ 75, 76— voluntariness of confession — voir dire evidence — failure to make findings — no prejudice**

   Where all the evidence on *voir dire* tended to show that defendant was fully warned of his constitutional rights, had knowingly and understandingly waived in writing his right to counsel, and then freely and voluntarily described the burglary with which he was charged, failure of the court to make findings of fact was harmless beyond a reasonable doubt, and the testimony relating to defendant's confession was properly admitted.

5. **Criminal Law § 50; Burglary and Unlawful Breakings § 4— opinion evidence as to dawn — admission not error**

   Even if the trial court in a first degree burglary case erred in allowing a police detective to testify that in his opinion dawn occurred after 4 a.m. on 20 April 1972, the night of the burglary, such error was not prejudicial to defendant.

6. **Burglary and Unlawful Breakings § 6; Larceny § 8— oral and written jury instructions given — no error**

   The trial court in a first degree burglary and larceny case did not err in orally instructing the jury as to the permissible verdicts, reducing to writing the elements of each crime involved in the permissible verdicts, and instructing the jury to carry the written instructions to the jury room for guidance during its deliberations.

7. **Burglary and Unlawful Breakings § 7— submission of lesser offenses — no error**

   In a first degree burglary and larceny case, error, if any, in the submission of burglary in the second degree and felonious breaking

or entering without evidence to support the lesser offenses was favorable to defendant and hence not prejudicial.

**8. Burglary and Unlawful Breakings § 8; Larceny § 10— sentence within statutory limits — no cruel and unusual punishment**

> Sentences of ten years for larceny and life imprisonment for burglary were within the maximum authorized by law and did not constitute cruel and unusual punishment. G.S. 14-2; G.S. 14-70.

DEFENDANT appeals from judgment of *Godwin, S.J.,* Third April 1973 Special Criminal Session, WAKE Superior Court.

Defendant was tried upon bills of indictment, proper in form, charging him with (1) first degree burglary of the home of Melvin Lewis Finch, Jr., located at 2110 St. Mary's Street, Raleigh, North Carolina, on 19 April 1972, and (2) larceny from the Finch driveway of one 1968 model Ford automobile valued at $1200.00, the property of The News and Observer Publishing Company, Inc. By consent the two cases were consolidated for trial.

Evidence offered by the State tends to show the facts narrated below.

M. L. Finch, Jr., his wife and three children, reside in a home at 2110 St. Mary's Street. He is employed by The News and Observer Publishing Company and on 19 April 1972 had in his possession a 1968 Ford automobile which belonged to his employer and was furnished for his use in the performance of his duties. On the night of 19 April 1972 he parked the vehicle in his driveway behind his house, removed the keys and left them on top of his briefcase on the dining room table when he retired that night about 11:15 p.m. His wife and three children had already gone to bed.

The Finch home has two stories and the entire family sleeps upstairs. The doors and windows were closed when Mr. Finch retired. Mrs. Finch had been washing windows that day, leaving the ladder used to reach the upper windows leaning against the house. The windows do not have screens on them. Mr. Finch arose the next morning about 6:15 or 6:30 a.m., came downstairs and noticed a screen door standing ajar, a window open, his briefcase on the floor of the den, and the car keys gone. He looked toward the driveway and discovered the car was gone. The family later discovered that a trumpet, a clarinet, a tape deck and some tapes were missing. These items, except the tapes, were later recovered, identified by Mr. Finch and offered

in evidence. The automobile was also recovered together with the keys.

No member of the Finch family knew the defendant or gave him permission to take the car or any of the other enumerated items.

J. Z. Holder is a fingerprint expert employed by the City and County Identification Bureau in Raleigh. He was called to the Finch residence about 7:30 a.m. on 20 April 1972. There he dusted the window ledge inside and out, photographed the latent prints made visible by the fingerprint powder, and lifted several latent fingerprints with lifting tape.

On 25 July 1972 Mr. Holder took an inked set of defendant's fingerprints. He then compared the latent prints lifted from the window ledge at the Finch home with defendant's set of inked prints and determined that the prints of defendant's left index finger, left middle finger and left ring finger were the same as the latent prints found on the window ledge inside the Finch residence.

H. Z. Looper is a City detective in Rocky Mount. Defendant was taken into custody on 18 May 1972 in Rocky Mount, fully advised of his constitutional rights, and signed a waiver of rights reading as follows: "I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me by anyone." The officers thereupon questioned him concerning charges of breaking and entering, carrying a concealed weapon, larceny and first degree burglary allegedly committed by defendant in Rocky Mount. Defendant talked freely and made a full confession of numerous offenses committed by him. He accompanied the officers to a house at 418 Lexington Street in Rocky Mount where, with defendant's permission, the officers searched the house. They found over two hundred items altogether, including the trumpet, clarinet and other items taken from the Finch home in Raleigh. The name of Mary Wheeler Finch, 2110 St. Mary's Street, Telephone Number 782-0683 appeared on the trumpet case. Defendant himself identified these articles. Officer Holder later surrendered the items of property belonging to Mr. Finch to Detective W. E. Ausley of the Raleigh Police Department. They

were properly identified and offered in evidence at the trial together with a tennis racket and an umbrella belonging to Mr. Finch which were located in the Ford automobile taken by defendant from the Finch driveway.

On 19 May 1972 Detective Ausley warned defendant of his constitutional rights after which defendant signed a waiver and talked freely concerning the break-in at the Finch home. Defendant said that around the 20th of April he parked a Rambler that he had stolen in Rocky Mount on St. Mary's Street in Raleigh; that he walked around behind the house across the street from where he parked, saw a ladder up to one of the windows, climbed the ladder, used a knife to unlock the window, went into the house, got the keys to the car, a clarinet, a trumpet and a small tape deck. After leaving the house he took a green Ford from behind the house. He told Detective Ausley that he entered the Finch home some time between midnight and 4 a.m. and said he always worked between midnight and 4 a.m. "because this is the time that people sleep the soundest." Detective Ausley stated that although he did not know the specific time dawn occurred on the morning of 20 April 1972, "it would have been after 4 a.m. on that date."

Defendant offered no evidence. His motion for judgment of nonsuit was denied. The jury found defendant guilty as charged in both cases. He was sentenced to life imprisonment in the burglary case and ten years in the larceny case to commence at the expiration of the life sentence. He appealed to the Supreme Court in the burglary case, and we allowed motion to bypass the Court of Appeals in the larceny case.

*Robert Morgan, Attorney General, and Walter E. Ricks, III, Assistant Attorney General, for the State of North Carolina.*

*Carter G. Mackie, Attorney for defendant appellant.*

HUSKINS, Justice.

[1] The burglary and larceny warrants were served on defendant on 19 May 1972. On 23 June 1972 defendant filed a written motion in Wake Superior Court demanding a speedy trial on the charges. Indictment was returned in the burglary case on 31 July 1972 and in the larceny case on 28 August 1972. No action was taken on defendant's motion until the cases were called for trial on 24 April 1973. Before pleading to the bills

of indictment defendant moved to dismiss for failure to afford him a speedy trial. Denial of said motion constitutes defendant's first assignment of error.

The record discloses that when defendant moved for a speedy trial on 26 June 1972 he was then serving six life sentences plus a term of ten years imposed at the 2 June 1972 Session of the Superior Court of Nash County upon defendant's pleas of guilty to six charges of second degree burglary and one count of breaking, entering and larceny. In response to an inquiry by the court, defendant and his counsel both stated that no witnesses essential to defendant's defense have disappeared, or would have been available in August 1972 but are not now available. In such a factual context the motion to dismiss was properly denied.

Of course the right to a speedy trial is an integral part of the fundamental law of this State, and the fact that an accused is in prison for other offenses does not mitigate against his right to a speedy and impartial trial. *State v. Johnson,* 275 N.C. 264, 167 S.E. 2d 274 (1969) ; *Smith v. Hooey,* 393 U.S. 374, 21 L.Ed. 2d 607, 89 S.Ct. 575 (1969). Even so, the burden is on an accused who asserts denial of his right to a speedy trial to show that the delay was due to the neglect or willfulness of the prosecution. *State v. Harrell,* 281 N.C. 111, 187 S.E. 2d 789 (1972) ; *State v. Johnson, supra; State v. Hollars,* 266 N.C. 45, 145 S.E. 2d 309 (1965).

"The word 'speedy' cannot be defined in specific terms of days, months or years, so the question whether a defendant has been denied a speedy trial must be answered in light of the facts in the particular case. The length of the delay, the cause of the delay, prejudice to the defendant, and waiver by defendant are interrelated factors to be considered in determining whether a trial has been unduly delayed." *State v. Brown,* 282 N.C. 117, 191 S.E. 2d 659 (1972). Here, the record is silent as to the cause of the eight to ten months delay in the trial of these cases. The length of the delay itself is not *per se* determinative, and there is no showing that the delay was purposeful or oppressive or by reasonable effort could have been avoided by the State. *See Pollard v. United States,* 352 U.S. 354, 1 L.Ed. 2d 393, 77 S.Ct. 481 (1957). The record affirmatively shows that defendant has not been prejudiced. He has not lost the benefit of any witnesses and has lost no "institutional opportunities." No detainer was filed in either case by the office of the solicitor; hence, there is

no reasonable basis for the assertion that the pendency of these two cases had any effect on defendant's treatment in prison, his classification as an inmate, his chances for parole, work release, good behavior credits, or in any other respect. *See State v. White,* 270 N.C. 78, 153 S.E. 2d 774 (1967).

We conclude that the length of the delay was not unreasonable and the delay itself was not prejudicial to defendant in preparing and presenting his defense. The constitutional right to a speedy trial prohibits arbitrary and oppressive delays by the prosecution. *State v. Johnson, supra.* The right is necessarily relative and under many circumstances is consistent with delays. *State v. Spencer,* 281 N.C. 121, 187 S.E. 2d 779 (1972); *Beavers v. Haubert,* 198 U.S. 77, 49 L.Ed. 950, 25 S.Ct. 573 (1905). Defendant's first assignment of error is overruled.

When the Rocky Mount police officers searched defendant's premises for items stolen from break-ins and robberies in and around Rocky Mount, they found, in addition to other stolen property, the property taken from the Finch home. These items were received in evidence over objection, and this constitutes defendant's second assignment of error. Defendant contends he did not consent to a search of his residence for the Finch items and argues that he was not warned that those items, if found, could be used in evidence against him.

[2] The question posed by this assignment has already been judicially determined contrary to defendant's position. "Warnings required by *Miranda* are inapplicable to searches and seizures, and a search by consent is valid despite failure to give such warnings prior to obtaining consent. It was so held in *State v. Oldham,* 92 Idaho 124, 438 P. 2d 275; *People v. Trent,* 85 Ill. App. 2d 157, 228 N.E. 2d 535; *State v. McCarty,* 199 Kan. 116, 427 P. 2d 616; *Lamot v. State,* 2 Md. App. 378, 234 A. 2d 615; *State v. Forney,* 182 Neb. 802, 157 N.W. 2d 403, cert. den. 393 U.S. 1044, 21 L.Ed. 2d 593, 89 S.Ct. 640. We adhere to that view. Furthermore, appellant has cited no decision, nor have we found any, holding that officers investigating a crime are required by the Federal Constitution to preface a request to search the premises with *advice* to the occupant that he does not have to consent to a search, that he has a right to insist on a search warrant, and that the fruits of the search may be used as evidence against him." *State v. Virgil,* 276 N.C. 217, 172 S.E. 2d 28 (1970).

[3]   Here, after full *Miranda* warnings and waiver of counsel in writing, defendant talked freely with officers concerning various crimes committed in the Rocky Mount area. Defendant told the officers he would take them to the house where the stolen property was concealed. "We told him that we would like to recover the property and the defendant told us that he would take us around to the house and we asked him if we could search the house. The defendant said that we could and that he would take us around there." Thus the evidence shows, and the trial court found on voir dire, that defendant consented to the search. We are bound by that factual finding. *State v. Little,* 270 N.C. 234, 154 S.E. 2d 61 (1967). Consent to search, freely and intelligently given, renders competent the evidence thus obtained. *State v. Hamilton,* 264 N.C. 277, 141 S.E. 2d 506 (1965); *State v. Coffey,* 255 N.C. 293, 121 S.E. 2d 736 (1961). Defendant's second assignment of error is overruled.

[4]   Defendant objected to Detective Ausley's testimony narrating defendant's confession. The jury was excused and a voir dire examination conducted by the court. On voir dire, evidence elicited by the State—defendant offered none—is to the effect that after full *Miranda* warnings and waiver of counsel in writing, defendant stated "that around the 20th of April he parked a Rambler that he had stolen in Rocky Mount on St. Mary's Street; that he walked around behind the house across the street from the point where he parked the Rambler. He saw a ladder up to one of the windows, climbed the ladder, used a knife to unlock the window, went into the house, got the keys to the car, a clarinet, a trumpet and a small tape deck. After leaving the house he took a green Ford from behind the house."

At the conclusion of the voir dire the court stated: "Then the objection will be overruled. The court will receive in evidence in response to additional questions to the witness with regard to conversations that he had with the defendant on May 19. A formal order will be prepared. You will both be furnished with copies of it." The jury was recalled and defendant's incriminating statement was received in evidence. Apparently by oversight no formal order was ever prepared, and the record is bare of any findings of fact following the voir dire. Relying on the absence of such findings, defendant assigns as error the admission, over objection, of his incriminating in-custody statements.

State v. Frank

The purpose of the voir dire was to hear evidence and determine whether defendant's statements to Detective Ausley were made voluntarily and understandingly and after he, had been fully warned of his constitutional rights as required by *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966). The test of admissibility is whether the statement by the defendant was in fact voluntarily made. *State v. Jones,* 278 N.C. 88, 178 S.E. 2d 820 (1971) ; *State v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572 (1951). Whether the statement, if made, was made voluntarily and understandingly is a question of fact to be determined by the trial judge in the absence of the jury upon the evidence presented on the voir dire. *State v. Clyburn,* 273 N.C. 284, 159 S.E. 2d 868 (1968) ; *State v. Outing,* 255 N.C. 468, 121 S.E. 2d 847 (1961). "The trial judge should make findings of fact with reference to this question and incorporate those findings in the record." *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1 (1966). The inadvertent omission, however, to make such findings does not require a new trial in the factual setting of this case. "While it is the better practice for a judge on a voir dire respecting an alleged confession to make his finding as to the voluntariness thereof and enter it in the record, a failure to do so is not fatal. Voluntariness is the test of admissibility, and this is for the judge to decide. His ruling that the evidence was competent of necessity was bottomed on the conclusion the confession was voluntary. . . . There is nothing in this record upon which a contrary conclusion could be based." *State v. Litteral,* 227 N.C. 527, 43 S.E. 2d 84 (1947). So it is here.

As stated in *State v. Doss,* 279 N.C. 413, 183 S.E. 2d 671 (1971), "it is better practice for the court to make such findings at some stage during the trial, preferably at the time the statement is tendered and before it is admitted." *Accord, State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384 (1972). *Compare State v. Vickers,* 274 N.C. 311, 163 S.E. 2d 481 (1968), and cases there cited. Even so, failure to do so constitutes harmless error in the factual context of this case. Here, all evidence of record tends to show that defendant had been fully warned of his constitutional rights, had knowingly and understandingly waived in writing his right to counsel, then freely and voluntarily described his entry into the Finch home on the night in question. Only one day prior to this confession he had confessed to six burglaries in Rocky Mount to which he later pled guilty in open court. Even now he does not challenge the voluntariness of any

confessions he made. He offered no evidence either on the voir dire or before the jury. Thus the only permissible inference to be drawn from the total picture is that defendant's confession was voluntary. Admission of the confession indicates that the trial judge so concluded. His failure to find the facts, as he should have done, upon which his conclusion was based, was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824, 24 A.L.R. 3d 1065 (1967); *State v. Taylor*, 280 N.C. 273, 185 S.E. 2d 677 (1972). Defendant's third assignment of error is overruled.

[5] Defendant's fourth assignment of error is based on admission of Detective Ausley's testimony, over objection, that in his opinion dawn occurred after 4 a.m. on 20 April 1972, the night of the burglary. Defendant argues that the witness was no better qualified than the jury to form an "opinion" on the subject matter; and, further, that evidence as to the time of dawn on the night in question is irrelevant.

Dawn is defined as "[t]he break of day; the first appearance of light in the morning; show of approaching sunrise." Webster's New International Dictionary 672 (2d ed. 1934). To warrant a conviction of burglary "it must be made to appear that there was a breaking and entering *during the nighttime* of a dwelling or sleeping apartment with intent to commit a felony therein." *State v. Mumford*, 227 N.C. 132, 41 S.E. 2d 201 (1947) (emphasis added). If the burglarized dwelling is occupied, it is burglary in the first degree; if unoccupied, it is burglary in the second degree. G.S. 14-51; *State v. Cox*, 281 N.C. 131, 187 S.E. 2d 785 (1972). The law considers it to be nighttime when it is so dark that a man's face cannot be identified except by artificial light or moonlight. *State v. McKnight*, 111 N.C. 690, 16 S.E. 319 (1892). "The rule is thus laid down by Blackstone: 'If there be daylight or crepusculum enough, begun or left, to discern a man's face withal, it is not burglary. But this does not extend to moonlight.' This rule of Blackstone is substantially supported in those states where there is no statutory definition of nighttime." 13 Am. Jur. 2d *Burglary* § 22 (1964). *See* Annot., 82 A.L.R. 2d 643 (1962). With respect to burglary, there is no statutory definition of nighttime in North Carolina.

In determining the admissibility of opinion evidence, the essential question "is whether the witness, through study or experience, has acquired such skill that he is better qualified than the jury to form an opinion on the subject matter to which his

testimony applies." *State v. Mitchell*, 283 N.C. 462, 196 S.E. 2d 736 (1973) ; *State v. Vestal*, 278 N.C. 561, 180 S.E. 2d 755 (1971) ; 1 Stansbury's North Carolina Evidence § 133 (Brandis rev. 1973). The evidence here does not indicate that Detective Ausley was any better qualified than the jury to form an opinion as to whether dawn occurred before or after 4 a.m. on 20 April 1972 in Raleigh. Even so, his opinion on the subject was entirely harmless. Given defendant's own admission that he always worked between midnight and 4 a.m. "because this is the time that people sleep the soundest," the jury could reasonably infer that defendant committed this crime during the nighttime and before "the first appearance of light in the morning." Conceding that the admission of this opinion evidence was erroneous, we hold it was not prejudicial. It is a matter of common knowledge that nighttime included the hours between midnight and 4 a.m. on 20 April 1972 in Raleigh, North Carolina. This assignment of error is overruled.

[6]  In the burglary case the presiding judge submitted as permissible verdicts (1) guilty of burglary in the first degree, or (2) guilty of burglary in the second degree, or (3) guilty of felonious breaking or entering, or (4) not guilty. In the other case the jury was instructed to return a verdict of (1) guilty of felonious larceny of the Ford automobile or (2) not guilty. In each case the judge correctly explained the law, pointed out the essentials to be proved by the State, and then applied the law to the various factual aspects of the evidence. At the close of the charge the judge reduced to writing the elements of burglary in the first degree, burglary in the second degree, and felonious breaking or entering. These writings were enclosed in three separate envelopes and the jury was instructed to carry them to the jury room for guidance during its deliberations. The same procedure was followed in the larceny case. The judge then suggested that the jury first consider and say whether the defendant was guilty or not guilty of the felonious larceny of the automobile, and then consider, *in descending order*, defendant's guilt or innocence of burglary in the first degree, burglary in the second degree, or felonious breaking or entering. Defendant objected "to the procedure of handing the jury written instructions as identified by the court," and assigns as error the overruling of his objection.

The main purpose of a charge is to aid the jury in arriving at a correct verdict according to law. *Lewis v. Watson*, 229 N.C.

20, 47 S.E. 2d 484 (1948). We said in *State v. Friddle*, 223 N.C. 258, 25 S.E. 2d 751 (1943) : "The chief object contemplated in the charge of the judge is to explain the law of the case, to point out the essentials to be proved on the one side and on the other, and to bring into view the relation of the particular evidence adduced to the particular issue involved."

We think the procedure employed here by the able trial judge promoted that objective. The jury was correctly instructed, both orally and in writing, with respect to the elements of each crime involved in the various permissible verdicts. The writing only served to aid the jury in following the oral instructions already given. We perceive no prejudice to defendant from the procedure employed.

The judge was not requested to put his instructions in writing and read them to the jury; nor did he do so of his own will. Thus, G.S. 1-182 does not apply in the factual context under discussion. This assignment of error is overruled.

[7] Error, if any, in the submission of burglary in the second degree and felonious breaking or entering without evidence to support these lesser offenses, as defendant argues, was favorable to defendant and hence not prejudicial. *State v. Accor and State v. Moore*, 281 N.C. 287, 188 S.E. 2d 332 (1972) ; *State v. Murry*, 277 N.C. 197, 176 S.E. 2d 738 (1970). This assignment has no merit.

[8] Defendant was sentenced to ten years for larceny and life imprisonment for burglary to commence at the expiration of the larceny sentence. He contends these consecutive sentences constitute cruel and unusual punishment prohibited by both State and Federal Constitutions. We have consistently held that a sentence of imprisonment which is within the maximum authorized by statute is not cruel or unusual in a constitutional sense, unless the punishment provisions of the statute itself are unconstitutional. *State v. Mitchell*, 283 N.C. 462, 196 S.E. 2d 736 (1973) ; *State v. Cradle*, 281 N.C. 198, 188 S.E. 2d 296 (1972) ; *State v. Hilton*, 271 N.C. 456, 156 S.E. 2d 833 (1967). The federal rule coincides with ours. *Martin v. United States*, 317 F. 2d 753 (9th Cir. 1963). First degree burglary committed prior to 18 January 1973 is punishable by life imprisonment. *State v. Waddell*, 282 N.C. 431, 194 S.E. 2d 19 (1973) ; *Furman v. Georgia*, 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726 (1972). Felonious larceny is punishable by imprisonment not exceeding

ten years. G.S. 14-70; G.S. 14-2. Thus the judgments pronounced are within the maximum authorized by law and must be upheld. This assignment is overruled.

Defendant's remaining assignments of error relate to motions for nonsuit, new trial and arrest of judgment. These formal motions are overruled without discussion.

Defendant having failed to show prejudicial error, the verdicts and judgments will not be disturbed.

No error.