STATE OF NORTH CAROLINA v. FANNTON DUMU CUMMINGS

No. COA07-374

(Filed 5 February 2008)

**Search and Seizure— Miranda warnings not applicable—consent—admitting fruits of search harmless error**

The trial court did not err in a second-degree murder, first-degree burglary, and attempted robbery with a firearm case by denying defendant's motion to suppress evidence found by officers during the initial search of his vehicle at the Marine Corps Air Station even though defendant consented to the search after

he invoked his right to consult with an attorney because: (1) Miranda warnings are not applicable to searches and seizures, and a search by consent is valid despite failure to give such warnings prior to obtaining consent; (2) there was competent evidence to support the trial court's findings that defendant's consent to search his vehicle was consensual and not coerced; and (3) even if a constitutional error had occurred in the search of defendant's vehicle, the error in admitting the fruits of the search was harmless beyond a reasonable doubt when there was no reasonable possibility that the evidence complained of might have contributed to the conviction, and there was overwhelming evidence of defendant's guilt, including testimony by two of defendant's accomplices.

Appeal by defendant from judgment entered 28 April 2006 by Judge Lindsay R. Davis in Superior Court, Guilford County. Heard in the Court of Appeals 13 November 2007.

*Attorney General Roy Cooper, by Special Deputy Attorney General Mark A. Davis, for the State.*

*M. Alexander Charns for defendant-appellant.*

WYNN, Judge.

*Miranda* warnings "are inapplicable to searches and seizures."[1] Here, the defendant argues that a search of his vehicle was unconstitutional because he consented to the search after he invoked his right to consult with an attorney. Because *Miranda* warnings are not required for a search to be valid and any error in admitting the fruits of the search was harmless, we affirm.

At trial, the State presented evidence that tended to show that on 15 December 2003, Defendant Fannton D. Cummings, Robert Blair, Darius Rutledge, and Adrian Watkins participated in the robbery of a residence located on Martin Street in Greensboro, North Carolina. The robbery resulted in the fatal shooting of Anthony Graham.

At trial, Mr. Blair, a co-defendant, testified that after 4:00 p.m. on 15 December 2003, he, Mr. Rutledge, Mr. Watkins, and Defendant drove to the home of Tarcia Mack, the mother of Defendant's child. The four met with Ms. Mack to discuss the idea of robbing her aunt's house on Martin Street because it was a known drug house, contain-

---

1. *State v. Frank*, 284 N.C. 137, 142, 200 S.E.2d 169, 173 (1973).

STATE v. CUMMINGS

[188 N.C. App. 598 (2008)]

ing cocaine and at least $25,000 in cash. They planned to go to the house on Martin Street after dark, when no one would be there, with Defendant carrying the gun. They also rented a U-Haul for the purpose of transporting stolen property.

At approximately 7:30 or 8:00 p.m., the foursome arrived at Martin Street, went around to the back of the house, and kicked the door open. Defendant carried a shotgun and Mr. Watkins carried a .40 caliber handgun. Mr. Blair testified that once in the home, he heard a shot come from the occupants of the home and heard Defendant and Mr. Watkins respond by shooting through the bedroom door of the room where the drugs were supposed to be located. Mr. Rutledge testified that he saw Defendant fire several shots from a sawed-off shotgun and saw Mr. Watkins fire from a handgun. Mr. Rutledge stated that he then jumped out of a window and heard several more shots. Mr. Blair testified that after hearing the last shot, he went into the bedroom and saw Mr. Graham lying on the floor with the door on top of him. The four men then left the house and drove away in the U-Haul.

Later that evening, Defendant called Deborah Johnson to ask for a ride because he had lost his keys. Defendant directed Ms. Johnson to McKnight Mill Boulevard, but she was unable to turn onto the street because police were blocking it off due to the recent robbery and shooting on nearby Martin Street. Ms. Johnson pulled over and Defendant got out, leaving his hooded jacket and gloves in her car. Shortly thereafter, Ms. Johnson and Defendant were questioned by police officers, including Detective Michael Conwell. Detective Conwell took custody of the clothing left by Defendant in Ms. Johnson's car and took Defendant downtown for questioning.

At the police department, Detective Conwell interviewed Defendant for approximately six hours and was suspicious about Defendant's explanation for being near Martin Street. Since Defendant told Detective Conwell that he was in the Marine Corps, Detective Conwell contacted Special Agent Eric Chapman of the Naval Criminal Investigative Service (NCIS) and asked him to secure Defendant's vehicle.

At the request of Detective Conwell, Agent Chapman interviewed Defendant on 19 December 2003 at the Marine Corps Air Station in New River. Defendant was not under arrest and his handcuffs were removed in the interview room. Agents advised Defendant of his rights, read him a military "acknowledgment and waiver of rights"

form, and gave him the chance to read the form himself. Defendant acknowledged that he understood his rights and requested permission to go to the bathroom, where officers overheard him pushing buttons on a cell phone. Defendant then requested a cigarette break and a glass of water.

Upon his return to the interview room, Defendant signed and initialed the waiver form. When asked what happened on 15 December 2003, Defendant stated that he was looking for his keys, then he paused and said "or something like that," and paused again. Defendant then requested legal counsel. Defendant was not asked any further questions about the shooting, but was asked if he would sign a "permissive authorization for search and seizure" form, and the form was explained to him. After Defendant attempted twice to call an attorney, he signed the form.

A search was conducted of Defendant's Ford Explorer, while Defendant was present. The search revealed a .12-gauge shotgun shell with red plastic casing, a box labeled "Remington Slugger," and two rolls of black electric tape. Agent Chapman called Detective Conwell and informed him of the items found, some of which Detective Conwell had specifically mentioned. A more thorough search was planned for the following day and Brigadier General Dickerson authorized the command search.

Based on the evidence found in the search and on additional evidence, Detective Conwell obtained an arrest warrant to charge Defendant with first-degree murder and first-degree burglary.

On 4 February 2005, defense counsel made a motion to suppress "all evidence secured as a result of the initial search of [Defendant's] vehicle on or about December 19, 2003, and all evidence secured through a subsequent command authorization." The trial court denied Defendant's motion on 1 May 2005.

Defendant's trial took place during the 3 April 2006 session of court. The jury found Defendant guilty of second-degree murder, first-degree burglary, and attempted robbery with a firearm. Defendant was sentenced as a Prior Record Level III and received consecutive sentences of 220 to 273 months for second-degree murder, 96 to 125 months for first-degree burglary, and 96 to 125 months for attempted robbery with a firearm.

The sole issue raised by Defendant on appeal is that the trial court erred by denying his motion to suppress the evidence found by

STATE v. CUMMINGS

[188 N.C. App. 598 (2008)]

officers during the initial search of his vehicle at the Marine Corps Air Station. Specifically, Defendant argues that the search was unconstitutional because he consented to the search after he invoked his right to consult with an attorney. We disagree.

In reviewing an appeal of a denial of a motion to suppress:

[O]ur review is limited to whether the trial court's findings of fact are supported by competent evidence. If competent evidence is found to exist, the findings of fact are binding on appeal. We must then limit our review to whether the findings of fact support the trial court's conclusions of law.

*State v. Houston*, 169 N.C. App. 367, 370-71, 610 S.E.2d 777, 780, *appeal dismissed*, 359 N.C. 639, 617 S.E.2d 281 (2005).

Defendant first challenges the search of his vehicle as a violation of his Fifth Amendment right against self-incrimination. Our Supreme Court has noted that *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), together with *Edwards v. Arizona*, 451 U.S. 477, 68 L. Ed. 2d 378 (1981), "establish that custodial interrogation must cease when an accused requests an attorney and may not be resumed by police officers without an attorney present." *State v. Daughtry*, 340 N.C. 488, 506, 459 S.E.2d 747, 755 (1995), *cert. denied*, 516 U.S. 1079, 133 L. Ed. 2d 739 (1996). "[T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *State v. Young*, 65 N.C. App. 346, 348, 309 S.E.2d 268, 269 (1983).

However, our Supreme Court has also held that *Miranda* warnings "are inapplicable to searches and seizures, and a search by consent is valid despite failure to give such warnings prior to obtaining consent." *State v. Frank*, 284 N.C. 137, 142, 200 S.E.2d 169, 173 (1973). Additionally, we find it persuasive that numerous federal courts have concluded that asking for consent to search is not an interrogation within the meaning of *Miranda*. *See United States v. Shlater*, 85 F.3d 1251, 1256 (7th Cir. 1996) (holding that "the consent to search was not a custodial interrogation triggering the previously invoked *Miranda* right to counsel"); *United States v. McCurdy*, 40 F.3d 1111, 1118 (10th Cir. 1994) ("An officer's request to search a defendant's automobile does not constitute interrogation invoking a defendant's Miranda rights.").

Here, at Detective Conwell's request, Defendant was brought to NCIS headquarters for an interview. Agents advised Defendant of his

rights, read him a military "acknowledgment and waiver of rights" form, and gave him the chance to read the form himself. Defendant acknowledged that he understood his rights, and signed and initialed the waiver form; but shortly after questioning began, he requested legal counsel. Defendant was not asked any further questions about the shooting, but was asked if he would sign a "permissive authorization for search and seizure" form, and the form was explained to him. After Defendant attempted twice to call an attorney, he signed the form, giving his consent for his vehicle to be searched. ·

After Defendant invoked his right to counsel, interrogation ceased. Agents did not ask any further questions about the robbery or Mr. Graham's homicide. The agents asked only whether Defendant would give his consent for his vehicle to be searched, a question to which *Miranda* warnings do not apply. *See Frank*, 284 N.C. at 142, 200 S.E.2d at 173. Because there is competent evidence to support the trial court's finding of fact, we cannot conclude that the trial court erred in finding that Defendant's "consent to search his vehicle was consensual."

Defendant also challenges the search of his vehicle as a violation the Fourth Amendment. Our Supreme Court has stated:

It is beyond dispute that a search pursuant to the rightful owner's consent is constitutionally permissible without a search warrant as long as the consent is given freely and voluntarily, without coercion, duress or fraud. The question whether a consent to a search was in fact "voluntary" or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.

*State v. Powell*, 297 N.C. 419, 425-26, 255 S.E.2d 154, 158 (1979) (citations omitted). Where a defendant is in custody, "the added factor of custody is a circumstance to be taken into account with all other surrounding circumstances in determining whether consent was freely and voluntarily given in the absence of coercion." *State v. Long*, 293 N.C. 286, 294, 237 S.E.2d 728, 733 (1977). We have previously held that where a defendant had requested to speak to a lawyer, his subsequent consent to the rolling of his trousers with a lint brush was voluntary and the trial court did not err in denying his motion to suppress. *State v. Davy*, 100 N.C. App. 551, 557, 397 S.E.2d 634, 637, *cert. denied*, 327 N.C. 638, 398 S.E.2d 871 (1990).

Here, uncontested findings of fact numbers sixteen and seventeen state that "defendant agreed, and was transported to NCIS head-

quarters," where "Agent Chapman advised [him] of his constitutional rights to remain silent and consult with counsel." Finding of fact nineteen states that "defendant said that he wanted to talk with his lawyer, and attempted to contact an attorney by telephone." Defendant presented no evidence of duress and coercion. To the contrary, the State's evidence tends to show that Agent Chapman allowed Defendant to use the bathroom, have a drink of water, and use his cell phone. Additionally, Defendant was not handcuffed during questioning.

In considering the totality of the circumstances, we cannot say that the trial court erred in concluding that "[t]he initial search of defendant's vehicle was pursuant to the defendant's consent, which was not coerced." Because we conclude that Defendant's Fourth and Fifth Amendment rights were not violated, we affirm the trial court's denial of Defendant's motion to suppress.

We note that even if a constitutional error had occurred in the search of Defendant's vehicle, the error in admitting the fruits of the search was harmless beyond a reasonable doubt. "Error committed at trial infringing upon one's constitutional rights is presumed to be prejudicial and entitles [defendant] to a new trial unless the error was harmless beyond a reasonable doubt." *State v. Russell*, 92 N.C. App. 639, 644, 376 S.E.2d 458, 461 (1989). "[T]he question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *State v. Soyars*, 332 N.C. 47, 58, 418 S.E.2d 480, 487 (1992).

Here, in addition to the shotgun shells and black electric tape found in Defendant's vehicle, the State presented detailed testimony from two of Defendant's accomplices, testimony from numerous police officers regarding Defendant's presence near Martin Street after the shooting, test results showing gunshot residue on Defendant's gloves, and test results matching the shotgun recovered to shotgun shells found at the crime scene. Accordingly, we conclude that any error resulting from admission of the evidence was harmless beyond a reasonable doubt.

No error.

Judges STEELMAN and GEER concur.