MILNER HOTELS, INC. v. MECKLENBURG HOTEL, INC. AND RABS, INC., A
VIRGINIA CORPORATION

No. 7826SC914

(Filed 3 July 1979)

**1. Evidence § 29— authentication of writing**

A writing may be authenticated by the production of sufficient evidence
from which the jury could find that the writing was either written or author-
ized by the person who the writing indicates was responsible for its contents.

**2. Evidence § 29.1— authentication of mailgram**

A mailgram giving notice of termination of a lease was sufficiently authen-
ticated for admission in evidence where a person who identified himself as the
secretary-treasurer of defendant told an officer and an employee of plaintiff
over the telephone that he would send plaintiff a written termination of the
lease; both plaintiff's officer and the employee recognized the voice on the
telephone as that of defendant's secretary-treasurer; and the mailgram was
thereafter received by plaintiff and was sent in the name of defendant and
defendant's secretary-treasurer.

**3. Interest § 2— interest on liquidated damages for termination of lease**

Plaintiff was entitled to interest on liquidated damages for the termina-
tion of a lease from the date that the lease was terminated. .

APPEAL by defendant from *Brannon, Judge.* Judgment
entered 1 May 1978 in Superior Court, MECKLENBURG County.
Heard in the Court of Appeals 12 June 1979.

The plaintiff, Milner Hotels, Inc., leased a hotel from
Mecklenburg Hotel, Inc. Mecklenburg Hotel, Inc. sold all of its in-
terest in that hotel to RABS, Inc. on 1 April 1974. The plaintiff
surrendered possession of the hotel to RABS, Inc. on 31 May
1974. The plaintiff then initiated this action by filing a complaint
against Mecklenburg Hotel, Inc. and RABS, Inc. alleging that it
had been notified by RABS, Inc. that its lease was to be ter-
minated prior to the date specified therein, that it had then sur-
rendered possession of the hotel to RABS, Inc., that a security
deposit in the amount of $7,500 which it had made at the time of
entering the lease had not been returned and that it had not
received $7,500 established by the terms of the lease as the
amount of liquidated damages to be paid the plaintiff in the event
of premature termination of the lease. RABS, Inc. denied that it
had terminated the plaintiff's lease and contended that the plain-

tiff was not entitled to a refund of its security deposit or to any liquidated damages. Additionally, RABS, Inc. counterclaimed for $11,546.81 alleging that the plaintiff owed it that amount on a Virginia judgment which arose out of circumstances surrounding the termination of the lease in question. At the conclusion of a trial concerning the issues raised by the parties, the jury returned a verdict finding that RABS, Inc. had terminated the lease, that the plaintiff was entitled to recover $15,000 by reason of that termination, that the plaintiff was estopped from asserting liability against Mecklenburg Hotel, Inc. and that RABS, Inc. was entitled to recover $11,546.81 from the plaintiff by reason of the matters set forth in the counterclaim. From the entry of judgment in accordance with that verdict, the defendant RABS, Inc., appealed.

Additional facts pertinent to this appeal are hereinafter set forth.

*Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston, by William P. Farthing, Jr. and Gaston H. Gage, for plaintiff appellee.*

*Helms, Mulliss & Johnston, by Robert B. Cordle, for defendant appellant RABS, Inc.*

MITCHELL, Judge.

The defendant first assigns as error the admission into evidence of a Western Union Mailgram. The mailgram was a material part of the plaintiff's case since the terms of the lease required that notice of the termination of the lease be in writing. The mailgram was the only written notice of termination that the plaintiff offered evidence of having received. In support of this assignment of error, the defendant contends that the trial court erred in admitting the mailgram because it was not properly authenticated. We do not agree.

[1]  Generally, a writing must be authenticated before it is admissible into evidence. *Walton v. Cagle,* 269 N.C. 177, 152 S.E. 2d 312 (1967). A writing may be authenticated by the production of sufficient evidence from which the jury could find that the writing was either written or authorized by the person who the writing indicates was responsible for its contents. *See Lumber*

*Co. v. Lumber Co.*, 185 N.C. 237, 117 S.E. 10 (1923); *Credit Co. v. Hall*, 34 N.C. App. 478, 238 S.E. 2d 625 (1977); 32 C.J.S., Evidence § 706 (1964). Once evidence from which the jury could find that the writing is genuine has been introduced, the writing becomes admissible. Upon the admission of the writing into evidence, it is solely for the jury to determine the credibility of the evidence both with regard to the authenticity of the writing and the credibility of the writing itself.

[2]  In the present case, the plaintiff's evidence tended to show that one of the plaintiff's employees, Barbara Dromke, received a telephone call on 8 April 1974 from a person who identified himself as Mr. Stein and whose voice she recognized as being that of Al Stein, the secretary-treasurer of RABS, Inc. During their conversation, Stein asked to speak with Ronald Miller, the president of the plaintiff corporation, concerning the termination of the lease of the hotel in question. Upon being told by Dromke that Miller was not in the office at that time, Stein replied that he was going to confirm the termination in writing but wanted to discuss possible dates with Miller. Dromke then suggested that Stein might like to speak with Ralph Totton, the vice-president and secretary of the plaintiff corporation. Stein agreed and Dromke had the call transferred to Totton. Stein identified himself to Totton who recognized Stein's "very distinctive" voice. Stein told Totton that he was going to take over the operation of the hotel. Totton then replied, "Well, there's got to be something in that lease that specifies some terminology for terminating the lease, probably in writing, and we should receive the proper notification." Stein answered, "You'll be hearing from me." Stein also said, "I expect to take over June 1, and I'd like to have the inventory taken around the twentieth of May, and would you be able to be present?"

The plaintiff's evidence further tended to show that Dromke was opening the plaintiff's mail on 9 April 1974 when she discovered what a Western Union employee later identified as a Western Union Mailgram. She opened the envelope, looked inside and immediately took the mailgram to Totton. Totton examined it and found the body of the mailgram to read as follows:

NOTICE OF TERMINATION IN 60 DAYS AS PER PHONE CONVERSA-TION AND LEASE. TAKE OVER JUNE 1 IF POSSIBLE. SEE YOU MAY 20TH, 1974.

A L STEIN R A B S INC

We find that the plaintiff's evidence was sufficient to permit the jury to find that A. L. Stein of RABS, Inc. sent the mailgram in question to the plaintiff corporation. Therefore, the mailgram was admissible and the defendant's assignment of error is over-ruled.

The defendant also assigns as error the trial court's ruling on an objection and motion to strike made by the plaintiff. During the direct examination by the defendant of its witness A. L. Stein, the following exchange took place:

Q. Was there a specific reason why you came on May 31, that day?

A. Yes, sir.

Q. What was that reason, sir?

A. During the last week of May, we received a telephone call from Hemingway Trucking Company that the Mecklen-burg Hotel was going to be closed down.

MR. GAGE: OBJECT and MOVE TO STRIKE, your Honor.

After hearing arguments of counsel, the trial court sustained the plaintiff's objection and granted the plaintiff's motion to strike. The trial court told counsel for the defendant that he was free to rephrase the question. Counsel for the defendant then asked the witness if he had received a telephone call from Charlotte during the week of May 31. The witness answered in the affirmative and then gave testimony essentially identical to that which had been stricken previously. Assuming *arguendo* that the trial court improperly sustained the objection and improperly granted the motion to strike, any such error was clearly harmless as the same evidence was later admitted. Therefore, the defend-ant's assignment of error is overruled.

The defendant further assigns as error the trial court's denial of his motion for a directed verdict and his motion for judg-ment notwithstanding the verdict. We have reviewed the evidence and find that it was sufficient to justify the trial court in submitting the case to the jury and supported a verdict in favor

of the plaintiff. Therefore, the trial court did not err and this assignment of error is overruled.

The defendant next assigns as error several portions of the trial court's final instructions to the jury. The defendant contends that the trial court intimated its opinion, instructed on facts not in evidence or contrary to the evidence, stressed the contentions of the plaintiff, misstated the issues, and misstated the law concerning the modification and waiver of the terms of a contract. We have reviewed the charge in its entirety and find that, when it is read in its entirety and contextually as required on appeal, it contains no reversible error. This assignment of error is overruled.

[3]   The defendant, finally assigns as error the trial court's action in granting the plaintiff interest on the $7,500 termination fee from 1 June 1974. The lease provided that the lessee would be entitled to $7,500 in liquidated damages if the lessor terminated the lease before 28 February 1977. Nothing to the contrary appearing in the lease, it is clear that the parties to the lease intended that in the event of such a termination, the lessee would be entitled to that amount on the date of termination of the lease. The jury having found that the lessor, RABS, Inc., terminated the lease, the plaintiff was entitled to the $7,500 in liquidated damages as of the date of termination and was entitled to interest on that amount for the period thereafter. Thus, the trial court did not err in awarding interest on the unpaid balance and the defendant's assignment of error is overruled.

The defendant has presented certain other contentions in support of the assignments of error previously referred to herein. We have reviewed those contentions and find them without merit.

The defendant having received a fair trial free from reversible error, we find

No error.

Judges MARTIN (Robert M.) and WEBB concur.