STATE OF NORTH CAROLINA v. HENRI NAVOTHLY YOUNG

No. COA06-1247

(Filed 16 October 2007)

**1. Appeal and Error— items not included in motion to suppress at trial—admission not challenged on appeal**

A murder defendant whose motion to suppress a statement to officers did not include the earlier recovery of his guns could not challenge the admission of those guns on appeal.

**2. Confessions and Incriminating Statements— timing of waiver of rights—question of fact**

Where the dispute in the admission of defendant's statements to officers was the point at which defendant waived his rights and not whether he was in custody or made the statements voluntarily, the question is one of fact, not law, and review is limited to whether the findings are supported by the evidence.

**3. Confessions and Incriminating Statements— findings— timing of invocation of rights**

The trial court did not err by denying defendant's motion to suppress his statements to the police where he contended that the court's findings failed to resolve the issue of whether he invoked his rights before being interrogated by the police. The findings demonstrated the sequence of events in which defendant was questioned by the police and found specifically that defendant was not questioned about this killing until after he waived his rights.

## 4. Confessions and Incriminating Statements— findings— no interrogation prior to waiver of rights—supported by evidence

Testimony from detectives supported findings that the police did not interrogate defendant prior to his waiver of his Miranda rights. The trial court chose to believe the detectives' rendition of the facts, rather than defendant's assertion that a supplemental report reflected the order in which he was questioned.

## 5. Constitutional Law— effective assistance of counsel—not moving to suppress test results

Defense counsel was not ineffective in not moving to suppress the results of gun tests obtained through trickery. The trial court would have denied the motion if made; defendant voluntarily delivered his guns to police, despite the trickery, and the hope for relief from criminal charges (assuming that engendering hope is improper) involved unrelated charges. Moreover, the detectives upheld their agreement.

## 6. Sentencing— felony murder—arrest of one of two underlying charges

The trial court did not err by not arresting both judgments on the felonies underlying felony murder, but should have arrested one.

## 7. Evidence— letters—authentication—circumstances

Familiarity with handwriting is not the only way to authenticate a letter and the trial court here did not err by admitting letters attributed to defendant by a codefendant whom defendant contended was not familiar with his handwriting.

## 8. Homicide— first-degree murder—short-form indictment— sufficiency

The short-form indictment for first-degree murder is sufficient to confer jurisdiction.

Appeal by defendant from order entered 19 July 2005 and judgment entered 26 August 2005 by Judge Henry E. Frye, Jr. in Superior Court, Guilford County. Heard in the Court of Appeals 28 August 2007.

*Attorney General Roy Cooper, by Assistant Attorney General John G. Barnwell, for the State.*

*Mark Montgomery, for defendant-appellant.*

WYNN, Judge.

In reviewing a trial court's denial of a motion to suppress, we consider "whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law."[1] Here, Defendant argues that the trial court erred by denying his motion to suppress because the trial court's findings of fact are incomplete and irrational in light of the evidence presented. Because the trial court's findings of fact are supported by competent evidence, we affirm.

At trial, the State presented evidence that tended to show that on 12 October 2003, Defendant Henri Navothly Young ("Defendant") and his co-defendants Quenalin Baldwin and Titto Tyson Sabb broke into the home of Pablo Jesus Velasquez-Mayonquin with the intent to rob him. Defendant was armed with a gun and co-defendant Baldwin was armed with an air gun. When the trio arrived at Mr. Velasquez-Mayonquin's home, Defendant entered through the unlocked back door and motioned for his fellow co-defendants to come inside. Defendant went to a bedroom at the end of the hallway and instructed Mr. Velasquez-Mayonquin and his girlfriend, later identified as Sonja Carpio, to "give him the dinero."

Baldwin testified that he heard gun shots and a woman scream and saw Mr. Velasquez-Mayonquin fall to the floor. After the shooting, the trio ran out the back door. Mr. Velasquez-Mayonquin was transported to the hospital and died about a week after the shooting. The medical examiner testified that Mr. Velasquez-Mayonquin died as a result of six gunshot wounds, specifically the three gunshot wounds to his chest.

Approximately one month after the shooting, Defendant was in jail on charges unrelated to Mr. Velasquez-Mayonquin's shooting. Detectives James O'Connor, Kevin Ray, and Mark Kun suspected Defendant in Mr. Velasquez-Mayonquin's shooting and wanted to get access to his pistols. On 14 November 2003, Detectives O'Connor, Kun, and Ray met with Defendant at High Point Jail and questioned Defendant about the accidental shooting of his girlfriend. Detective O'Connor indicated that Detective Kun was a federal officer working to remove guns from the streets. The detectives agreed not to charge Defendant with the shooting of his girlfriend or for possession of a firearm by a felon, if Defendant would turn over his two guns. Dur-

---

1. *State v. Cockerham*, 155 N.C. App. 729, 736, 574 S.E.2d 694, 699 (citation omitted), *disc. review denied*, 357 N.C. 166, 580 S.E.2d 702 (2003).

ing the 14. November 2003 conversation, Detectives did not question Defendant about or mention the homicide of Mr. Velasquez-Mayonquin. Defendant agreed to turn in his firearms and arranged for his brother to bring his two pistols to the police station. Ballistic testing was completed on the guns, and the testing showed that one of Defendant's pistols, State's Exhibit 19, fired the fatal shots in the homicide of Mr. Velasquez-Mayonquin.

On 1 December 2003, Defendant was charged with the murder of Mr. Velasquez-Mayonquin. Detective O'Connor presented Defendant with a written *Miranda* waiver form and at that time, Defendant questioned the detectives about the various levels of homicide and the possible penalties. The detectives called Randy Carroll, an Assistant District Attorney in Guilford County, to answer Defendant's questions. According to the detectives, Defendant appeared to be weighing his options, and thereafter, waived his *Miranda* rights. At trial, a taped, redacted account of Defendant's statement to police that he had shot Mr. Velasquez-Mayonquin was admitted into evidence and played for the jury.

Following a jury trial, Defendant was found guilty of first-degree murder, first-degree burglary, and attempted robbery with a dangerous weapon and was sentenced to life imprisonment without parole. Defendant appeals contending that: (I) the trial court erred by denying his motion to suppress his statement to police; (II) he received ineffective assistance of counsel because trial counsel did not raise a meritorious constitutional claim; (III) the trial court committed plain error by failing to arrest judgment on both of the underlying felonies; (IV) the trial court erred by admitting into evidence letters attributed to Defendant; and (V) the murder indictment was inadequate to confer jurisdiction on the trial court.

I.

**[1]** Defendant first contends that the trial court erred by denying his motion to suppress his statements to police. Specifically, Defendant asserts that he was interrogated on 1 December 2003, "prior to invoking his *Miranda* rights" and that the trial court's findings of fact were incomplete because the trial court failed to resolve the issue of whether he waived his *Miranda* rights prior to being interrogated by the police. We disagree.

As a preliminary matter, we note that Defendant's first argument refers to the trial court's denial of his motion to suppress his statement made to police on 1 December 2003. However, Defendant

spends a great deal of time discussing the alleged erroneous admission of Defendant's guns recovered by police on 14 November 2003. Defendant's motion to suppress did not include a request to suppress the guns. Therefore, Defendant cannot now challenge the admission of the guns, and his discussion of such is in violation of the North Carolina Rules of Appellate Procedure. *See* N.C. R. App. P. 10(a) (providing that "the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal . . . ."). Accordingly, Defendant's argument regarding the suppression of the guns will not be considered.

[2] The standard of review to determine whether a trial court properly denied a motion to suppress is "whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law." *State v. Cockerham,* 155 N.C. App. 729, 736, 574 S.E.2d 694, 699 (citing *State v. Wynne,* 329 N.C. 507, 522, 406 S.E.2d 812, 820 (1991)), *disc. review denied,* 357 N.C. 166, 580 S.E.2d 702 (2003). The trial court's findings of fact "are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Buchanan,* 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (citations omitted).

In this case, the parties do not dispute whether Defendant was in custody or whether his statements were voluntary, issues of law that are reviewed *de novo. See State v. Crudup,* 157 N.C. App. 657, 659, 580 S.E.2d 21, 23 (2003) (noting that whether a person is in custody is a fully reviewable question of law); *State v. Ortez,* 178 N.C. App. 236, 244, 631 S.E.2d 188, 195 (2006) (stating that conclusions concerning the voluntariness of a defendant's statement are reviewable *de novo*). The parties do dispute the point at which Defendant waived his *Miranda* rights. Since this is not a question of law, but a question of fact, our review is limited to whether the findings of fact are supported by competent evidence. *Buchanan,* 353 N.C. at 336, 543 S.E.2d at 826.

It is well established that "*Miranda* warnings are required only when a defendant is subjected to custodial interrogation." *State v. Johnston,* 154 N.C. App. 500, 502, 572 S.E.2d 438, 440 (2002) (citing *State v. Patterson,* 146 N.C. App. 113, 121, 552 S.E.2d 246, 253 (2001)). The *Miranda* decision defines custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona,* 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706 (1966). Interrogation is further defined as "[a] practice that

the police should know is reasonably likely to evoke an incriminating response from a suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 64 L. Ed. 2d 297, 308 (1980).

**[3]** Defendant provides three arguments to support his contention that the trial court erred by denying his motion to suppress his statements made to police on 1 December 2003. First, Defendant argues that the trial court's findings of fact are incomplete because the court did not make a finding about whether Defendant was questioned before the police gave him *Miranda* warnings. We disagree. The trial court made the following findings of fact concerning Defendant's renewed motion to suppress his statements to police after a *voir dire* hearing of Detectives O'Connor and Ray:

19. Detective James O'Connor advised the defendant of his Miranda rights, and went over each of these rights with the defendant.

20. Detective O'Connor indicated that defendant understood each of those rights.

21. An unsigned form which contained those Miranda rights was given to the defendant to review for himself.

22. Defendant at the time did not sign the waiver or invoke his right to counsel or his right to remain silent. Defendant indicated that prior to waiving his rights, he wanted questions answered.

. . . .

26. Defendant was approximately five to six feet away from Detective O'Connor when he contacted Assistant District Attorney Carroll on his cell phone. Prior to and during this call, the defendant did not invoke his right to remain silent.

. . . .

31. After receiving this information, the defendant responded that he could receive life or death. Defendant than said "do I live or die." He then began to say the words life death repeatedly as he gestured with his hands as if weighing scales.

32. He subsequently looked directly at the Detective, and said "I want to die, let's talk."

33. At 5:05 p.m., the defendant then executed the rights waiver form State's Exhibit 55 by signing and dating it which included

waiving his right to remain silent and his right to counsel being present.

34. After signing the rights waiver form the Detectives talked to the defendant about the evidence against him including the alleged murder weapon a firearm, and other information concerning the case.

The trial court's findings of fact demonstrate the sequence in which Defendant was questioned by police, and as evidenced specifically by finding of fact number thirty-four, the trial court found that the police did not question Defendant about Mr. Velasquez-Mayonquin's homicide until after he waived his *Miranda* rights. Accordingly, we find that the trial court's findings of fact are not incomplete.

**[4]** Defendant next argues that to the extent the trial court found that the police did not interrogate him prior to his waiver of his *Miranda* rights, the evidence does not support such a finding. We disagree.[2] Defendant assigns error to findings of fact numbers nineteen, twenty, twenty-one, twenty-two, twenty-six, thirty-one, thirty-two, thirty-three, and thirty-four. In support of Defendant's contention that the detectives interviewed him before reading him his *Miranda* rights, Defendant relies on a portion of Detective Ray's supplemental report, which states: "O'Connor and I interviewed him at the time of his arrest at the police department. We confronted him with evidence including the fact that we had the murder weapon. Young was advised of his rights, and he waived them."

However, the findings of fact contested by Defendant are supported by the testimony of Detectives O'Connor and Ray.[3] During direct examination in the *voir dire* hearing, Detective O'Connor stated that he:

Got [Defendant] something to drink. We sat down. Detective Ray was the lead investigator. He . . . advised [Defendant] what he was

2. Because we find no error in the trial court's findings of fact, we do not reach Defendant's third contention that if the police questioned Defendant prior to giving *Miranda* warnings, it is immaterial that they also questioned him after giving *Miranda* warnings.

3. We note that the trial court's findings of fact state that "Detective James O'Connor advised the defendant of his Miranda rights," but both detectives testified that Detective Ray advised Defendant of his *Miranda* rights. Defendant did not dispute which detective advised him of his *Miranda* rights, and a mistake in the detective's name ultimately does not change our analysis.

charged with, he was being charged with this murder. And there wasn't much reaction from him. He just kind of sat there . . . . [W]e told him, uh, there was conversation prior to it, just that we'd like to talk with him about this. That . . . a murder, this case is like a big puzzle, and that he's holding some of the pieces of the puzzle, and that we wanted a complete and clear picture of this, and would he talk with us. And . . . he sat there and said, you know, kind of nodded his head . . . he was kind of unclear. Detective Ray advised him of his Miranda rights.

Additionally, Detective Ray testified that he:

read [Defendant] the Miranda rights, asking him if he understood each one. And after those rights were read, he had this question. Then a phone call was made. His questions were answered. And after he decided that he wanted to continue and to speak with us, after he had decided that he didn't want an attorney and he decided that he didn't want to be silent, he signed the waiver. And at that time, I recorded the time on the form.

Furthermore, in response to counsels' questions, both Detectives repeatedly testified that Defendant was not questioned prior to receiving his *Miranda* warnings. The statements of Detectives O'Connor and Ray constitute competent evidence supporting the trial court's findings of fact, even if conflicting evidence was also presented. *See Buchanan*, 353 N.C. at 336, 543 S.E.2d at 826.

Defendant also assigns error to findings of fact numbers thirteen and fourteen and conclusions of law numbers one through six. However, Defendant does not set forth any argument to support his assignments of error; thus, the assignments of error are deemed abandoned. N.C. R. App. P. 28(a) (providing that "[q]uestions raised by assignments of error in appeals from trial tribunals but not then presented and discussed in a party's brief are deemed abandoned.").

We must keep in mind that "[w]here the trial judge sits as a jury and where different *reasonable* inferences can be drawn from the evidence, the determination of which reasonable inferences shall be drawn is for the trial judge." *Sharp v. Sharp*, 116 N.C. App. 513, 530, 449 S.E.2d 39, 48 (1994) (internal quotations and citations omitted) (emphasis in original). Indeed, "[t]he trial judge has the authority to believe all, any, or none of the testimony." *Id.* Here, the trial court chose to believe the detectives' rendition of the facts, rather than Defendant's assertion that the supplemental report reflected the

order in which he was questioned. Accordingly, we hold that there is competent evidence to support the findings of fact, and in turn, the findings of fact support the conclusions of law. Therefore, we affirm the trial court's denial of the motion to suppress.

## II.

**[5]** Defendant next argues that he was denied effective assistance of counsel because his trial counsel failed to raise a meritorious constitutional claim at trial. We disagree.

We follow a two-part test for determining the merits of an ineffective assistance of counsel claim:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984)). Our Supreme Court has stated "[c]ounsel is given wide latitude in matters of strategy, and the burden to show that counsel's performance fell short of the required standard is a heavy one for defendant to bear." *State v. Fletcher*, 354 N.C. 455, 482, 555 S.E.2d 534, 551 (2001), *cert. denied*, 537 U.S. 846, 154 L. Ed. 2d 73 (2002). We presume trial counsel's advocacy to be "within the boundaries of acceptable professional conduct." *State v. Roache*, 358 N.C. 243, 280, 595 S.E.2d 381, 406 (2004).

In this case, Defendant argues that his counsel was ineffective because he failed to make a motion to suppress the results of the gun tests, which were obtained by the police through trickery. Defendant cites *Bumper v. North Carolina* for the proposition that consent given as a result of fraud or dishonesty by the police is not consent. 391 U.S. 543, 550, 20 L. Ed. 2d 797, 804 (1968) ("When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent.").

STATE v. YOUNG

[186 N.C. App. 343 (2007)]

However, for the principles from *Bumper* to apply, there must be a search. "Before the legality of an alleged search may be questioned, it is necessary to first determine whether there has actually been a search. A search ordinarily implies, a quest by an officer of the law, a prying into hidden places for that which is concealed." *State v. Raynor*, 27 N.C. App. 538, 540, 219 S.E.2d 657, 659 (1975) (internal quotation omitted). Our Supreme Court has found that there is no search within the constitutional prohibition against unreasonable searches and seizures when "the evidence is delivered to a police officer upon request and without compulsion or coercion." *State v. Reams*, 277 N.C. 391, 396, 178 S.E.2d 65, 68 (1970), *cert. denied*, 404 U.S. 840, 30 L. Ed. 2d 74 (1971), *overruled on other grounds*, 336 N.C. 268, 443 S.E.2d 68 (1994).

Defendant's argument hinges on whether the detectives' actions amounted to "compulsion or coercion," because despite the trickery, Defendant voluntarily delivered the guns to the police, negating a search and a violation of the Fourth Amendment. *See Raynor*, 27 N.C. App. at 541, 219 S.E.2d at 659. Defendant contends that the threat of prosecution for possession of a firearm by a felon and for the accidental shooting of his girlfriend led Defendant to turn over the guns out of coercion.

Defendant cites *State v. Booker* for the proposition that statements that result from the threat or promise of prosecution are coercive, so the statements and the evidence discovered as a result must be suppressed. 306 N.C. 302, 293 S.E.2d 78 (1982). However, Defendant interprets *Booker* too broadly. In *Booker*, our Supreme Court made clear that "the inducement to confess whether it be a promise, a threat, or mere advice must relate to the prisoner's *escape* from the criminal charge against him." *Id.* at 308, 293 S.E.2d at 82 (emphasis in original). Moreover, "[i]mproper inducement engendering hope must promise relief from the criminal charge to which the confession relates, not to any merely collateral advantage." *Id.*

Here, the detectives promised Defendant relief from his criminal charges relating to the accidental shooting and possession of a firearm by a felon. Assuming *arguendo* that engendering hope was improper, both of the charges mentioned by the detectives were not related to the murder of Mr. Velasquez-Mayonquin, therefore, the coercive argument fails. In fact, the detectives were careful not to mention the murder of Mr. Velasquez-Mayonquin in their 14 November 2003 conversation with Defendant. Furthermore, the

detectives upheld their agreement not to pursue criminal charges against Defendant for the accidental shooting and possession of a firearm by a felon.

Even if defense counsel had made the motion to suppress the guns at trial, based on the evidence in the record, the trial court would have denied Defendant's motion. We do not consider counsel's actions at trial as falling below the "objective standard of reasonableness." Accordingly, we find no error.

## III.

**[6]** Next, Defendant contends that the trial court committed plain error by failing to arrest both underlying felonies. The State agrees with Defendant, but only to the extent that one of the felonies should be arrested. After the jury convicted Defendant of first-degree murder, first-degree burglary, and attempted robbery with a dangerous weapon, the trial court entered judgment against Defendant on first-degree murder and both underlying felonies. Our law is clear that "if the State secures an indictment for the underlying felony and a defendant is convicted of both the underlying felony and felony murder, the defendant will only be sentenced for the murder." *State v. Dudley*, 151 N.C. App. 711, 716, 566 S.E.2d 843, 847 (2002), disc. *review denied*, 356 N.C. 684, 578 S.E.2d 314 (2003). Thus, "the underlying felony must be arrested under the merger rule." *Id.* Accordingly, we remand this case for the trial court to arrest judgment on one of the underlying felonies.

## IV.

**[7]** Defendant next argues that the trial court erred by admitting into evidence letters attributed to Defendant. We disagree.

Under our Rule of Evidence Rule 901(b)(2), authentication or identification of handwriting may be established through "nonexpert opinion as to the genuineness of the handwriting, based upon familiarity not acquired for purposes of the litigation." N.C. Gen. Stat. § 8C-1, Rule 901(b)(2) (2005). However, Rule 901 also provides that authentication or identification may be established through distinctive characteristics and the like, i.e., through "appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." N.C. Gen. Stat. § 8C-1, Rule 901(b)(4).

Here, Defendant's co-defendant Baldwin testified that he received three letters from Defendant. Defendant asserts that Baldwin was not

STATE v. YOUNG

[186 N.C. App. 343 (2007)]

familiar with Defendant's handwriting and was not sure if Defendant could write; therefore, the State failed to authenticate the letters. However, familiarity with one's handwriting is not the only method to authenticate a letter.

In this case, Baldwin testified that Defendant told him on several occasions that he would write to him.[4] Baldwin also explained that one of letters was addressed "From Navothly to Q," which was how Baldwin and Defendant referred to each other. Two of the letters also had the return address "Henri Young, 507 East Green Drive." In addition to these distinctions, the content of the letters indicated that Defendant wrote the letters because they contained intimate knowledge of the crime. Although such evidence may be circumstantial, we have held:

> A writing may be authenticated by the production of sufficient evidence from which the jury could find that the writing was either written or authorized by the person who the writing indicates was responsible for its contents. Once evidence from which the jury could find that the writing is genuine has been introduced, the writing becomes admissible. Upon the admission of the writing into evidence, it is solely for the jury to determine the credibility of the evidence both with regard to the authenticity of the writing and the credibility of the writing itself.

*Milner Hotels, Inc. v. Mecklenburg Hotel, Inc.*, 42 N.C. App. 179, 180-81, 256 S.E.2d 310, 311 (1979); *see also State v. Davis*, 203 N.C. 13, 28, 164 S.E. 737, 745 ("That the authorship and genuineness of letters, typewritten or other, may be proved by circumstantial evidence, is fully established by the decisions."), *cert. denied*, 287 U.S. 649, 77 L. Ed. 561 (1932).

Accordingly, based on the evidence presented by the State, the trial court did not err in admitting State's exhibits 70, 71, and 72 into evidence.

## V.

[8] In his final argument, Defendant contends that the short-form murder indictment was inadequate to confer jurisdiction on the trial court. This argument is without merit.

"Our Supreme Court 'has consistently held that indictments for murder based on the short-form indictment statute are in compliance

---

4. Defendant spoke with Baldwin when they were in a holding cell together and when they were both in another county in the same cell block.

with both the North Carolina and United States Constitutions[,]' and 'the short-form indictment is sufficient to charge first-degree murder on the basis of any of the theories, including premeditation and deliberation . . . .' " *State v. Stroud,* 147 N.C. App. 549, 556-57, 557 S.E.2d 544, 549, *cert. denied,* 356 N.C. 623, 575 S.E.2d 758 (2002). Accordingly, we find no error.

Affirmed in part, remanded in part for resentencing.

Judges HUNTER and BRYANT concur.