STATE OF NORTH CAROLINA v. ERIC JEROME McLEOD

No. COA09-136

(Filed 7 July 2009)

**1. Search and Seizure— warrantless search—motion to suppress evidence—implied consent**

The trial court did not err in a possession of a firearm by a convicted felon case by failing to suppress evidence seized during a warrantless search into the residence defendant shared with his

mother because the search and seizure was authorized based on implied consent because: (1) once defendant's mother told police that defendant had a gun in the residence, and defendant confirmed the presence of a gun in the residence and where it could be located, the deputies were justified in entering the residence and seizing the weapon; (2) valid consent may be given by any one of the cohabitants of a premises even though no other cohabitant has consented; (3) based on the specific facts of this case, defendant and his mother, both cohabitants of the residence, gave consent through their words and actions for the officers to enter the residence and seize the weapon; and (4) the issue of whether the officers were entitled to conduct a protective sweep need not be addressed in light of the fact that implied consent existed to justify the search and seizure.

**2. Constitutional Law— right to counsel—waiver of counsel— pro se representation—failure to make inquiry required by N.C.G.S. § 15A-1242**

The trial court erred in a possession of a firearm by a convicted felon case by allowing defendant to discharge his attorney and proceed *pro se* in the middle of trial when the trial court failed to make proper inquiries under N.C.G.S. § 15A-1242 before releasing defendant's counsel because: (1) the trial court made no inquiry as to defendant's understanding of his right to counsel, his understanding of the charge and possible punishment, or the consequences of proceeding without counsel; (2) while defendant made it clear he wanted to proceed on his own and keep counsel on standby to help him, the trial court had an obligation to conduct the inquiry prior to allowing defendant to proceed; and (3) the State acknowledged that it was unable to distinguish the facts of this case from the facts set forth in authority cited by defendant, and also acknowledged that defendant was entitled to a new trial based on the error committed.

Appeal by defendant from judgment entered 14 May 2008 by Judge A. Leon Stanback, Jr. in Wake County Superior Court. Heard in the Court of Appeals 11 June 2009.

*Attorney General Roy Cooper, by Assistant Attorney General J. Joy Strickland, for the State.*

*J. Clark Fischer for defendant-appellant.*

**STATE v. McLEOD**

[197 N.C. App. 707 (2009)]

BRYANT, Judge.

Defendant appeals from judgments and commitments entered 14 May 2008 after a jury returned a verdict of guilty on the charge of possession of a firearm by a convicted felon. For the reasons stated herein, we affirm the trial court's ruling on the motion to suppress, but remand for a new trial.

The evidence presented at trial tended to show that Deputy Janie M. Rowe, a twelve year employee of the Wake County Sheriff's Office, testified that she was working on the south side of Wake County on 26 October 2007. On that date, Deputy Rowe and fellow Deputy Darrell Morris responded to a disturbance between defendant and his mother at a Raleigh residence. Both parties lived at the residence and were present when the officers arrived. The disturbance was a verbal disagreement which led defendant's mother (Miss Lillie Wilson) to pursue an eviction of defendant. According to Miss Wilson, defendant made rental payments and cut her grass. Miss Wilson was informed by the deputies that she would have to pursue an eviction through a civil process. After speaking with and calming both parties, the deputies left the residence.

Approximately thirty minutes after leaving the residence, Deputy Rowe and Deputy Morris were called to the Wilson/McLeod residence for a second time. The deputies arrived to find defendant locked out of the residence and sitting in the garage area. Deputy Rowe went into the residence and spoke with Miss Wilson. Deputy Morris remained outside with defendant. Miss Wilson told Deputy Rowe that defendant had a gun, given to him by her late husband, which was kept in defendant's room.[1] After receiving this information Deputy Rowe and Deputy Morris accompanied defendant inside the residence and went into a bedroom in which defendant had been seen sitting on a bed earlier that evening. In the bedroom, Morris asked where defendant kept the gun. Defendant replied, "I keep it under the bed." Defendant testified that he had free range of the residence and that he slept anywhere in the home, with the exception of his mother's room.

Deputy Morris located the weapon—a sawed off shotgun with pistol grip—under the bed. The gun was not loaded and appeared to be in operable condition. Deputy Morris secured the weapon in the trunk of his patrol vehicle. Defendant was asked if he was a convicted

---

1. On cross examination Miss Wilson testified that she did not know "for certain" if there was a firearm in the residence, but she "just said it."

felon, and admitted that he was a convicted felon. Deputy Morris received confirmation from communications that defendant had a felony conviction.[2] Defendant was then arrested for possession of a firearm by a convicted felon.

Defendant was indicted on the charge of possession of a firearm by a convicted felon on 11 December 2007. Defendant filed a pretrial motion to suppress. This motion was heard and denied by Judge Paul W. Gessner in Wake County Superior Court on 21 April 2008. At the close of the State's evidence at trial, defendant discharged his court-appointed attorney and was allowed to represent himself. The pro se defendant called Deputy Rowe and Deputy Morris as defense witnesses to testify that the situation between defendant and his mother was not hostile or volatile. Testifying on his own behalf, defendant denied having ownership of the weapon and denied having knowledge of his prior felony conviction.

On 14 May 2008, the jury returned a guilty verdict on the charge of possession of a firearm by a convicted felon. The trial court entered judgment consistent with the jury verdict and sentenced defendant to a minimum of thirteen months and a maximum of sixteen months in the custody of the North Carolina Department of Correction. This judgment was suspended and defendant was placed on eighteen months supervised probation. Defendant appeals.

Defendant raises two issues on appeal: whether the trial court erred by (I) denying defendant's motion to suppress evidence and (II) allowing defendant to proceed pro se. Because of our resolution of the second issue, wherein we remand for a new trial, and because this will likely arise again at a new trial, we address defendant's first issue regarding suppression of the evidence on the merits.

*I*

[1] Defendant argues that the trial court erred in failing to suppress evidence seized during a warrantless entry into the residence defendant shared with his mother when the trial court concluded the search and seizure was authorized as a protective sweep based on implied consent. We disagree.

"[A] law-enforcement officer may conduct a search and make seizures without a search warrant or other authorization, if consent

2. Judgment in file number 90 CRS 54252 for the offense of burning a dwelling house on 18 July 1990. Defendant pled guilty to the felony on 5 May 1992 in Wake County Superior Court and was sentenced to eight years imprisonment.

to the search is given." N.C. Gen. Stat. § 15A-221(a) (2007). "[T]he State need only show 'that defendant's consent to the search was freely given, and was not the product of coercion.' " *State v. Jacobs,* 162 N.C. App. 251, 258, 590 S.E.2d 437, 442 (2004). Consent to search must be given "[b]y a person who by ownership or otherwise is reasonably apparently entitled to give or withhold consent to a search of [the] premises." N.C. Gen. Stat. § 15A-222(3) (2007).

"The standard of review to determine whether a trial court properly denied a motion to suppress is whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law." *State v. Young,* 186 N.C. App. 343, 347, 651 S.E.2d 576, 579 (2007). A trial court's findings of fact are "conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Buchanan,* 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001). Where "a defendant does not assign error to . . . the trial court's conclusions of law . . . the conclusions of law are binding [on appeal]". *Dodson v. Dodson,* 185 N.C. App. 265, 267, 647 S.E.2d 638, 641 (2007). Unchallenged findings of fact, "[w]here no exceptions have been taken[,] . . . are presumed to be supported by competent evidence and binding on appeal." *State v. Phillips,* 151 N.C. App. 185, 190, 565 S.E.2d 697, 701 (2002).

In the instant case the trial court made the following unchallenged findings of fact:

1. That Deputy Morris and Deputy Rowe of the Wake County Sheriff's Department answered a disturbance call in the evening hours of October 26, 2007 at 8805 Carolina Marlin Court, Raleigh, North Carolina.

2. That the deputies talked with the complainant Lillie Mae Wilson and the Defendant in the house. The Defendant was in a bedroom, with the door open, sitting on the bed.

3. That approximately 20 minutes later, Deputies responded back to this same address pursuant to dispatch to speak with Defendant who informed deputies he had been locked out of the house by Wilson.

4. That Deputy Rowe went inside [the] residence to speak with Wilson, and Deputy Morris spoke with the Defendant in the garage area.

5. That Lillie Mae Wilson testified she told Deputy Rowe the Defendant had indicated to Wilson that he had a gun.

6. hat Deputy Rowe returned to speak with Deputy Morris.

7. From this interchange, Deputy Morris asked the Defendant if he had a weapon.

8. That the Defendant responded yes, there was a gun, in the house, under his bed.

9. That Deputy Morris went into the house and to the Defendant's bedroom where he had been when deputies arrived on prior call, and found a weapon under the bed as the Defendant had indicated.

10. That because of the volatile situation, Deputy Morris secured weapon [sic] and placed it into his patrol vehicle.

11. That Deputy Morris asked the Defendant if he had been convicted of a felony.

12. That the Defendant responded yes, he was convicted of a felony.

Thereafter the trial court concluded that, based on *United States v. Hylton*, implied consent was given to search for the weapon.

In *United States v. Hylton*, 349 F.3d 781, 2003 U.S. App. LEXIS 23575 (4th Cir. 2003), *cert. denied*, 541 U.S. 1065, 158 L. Ed. 2d 966 (2004), the Court upheld the denial of the defendant's motion to suppress evidence of a gun seized from a residence finding that consent to enter and retrieve a gun was implied by words and actions. In that case the defendant and his girlfriend shared an apartment with their children. The defendant's girlfriend called police, saying the defendant was in her apartment, that he would not let her in, and that he had a gun. She said the gun was under the mattress of the bed in the bedroom they shared. The defendant was arrested and officers thereafter entered the apartment and retrieved a loaded .38 caliber gun under the mattress in the bedroom.

In his appeal of the suppression of his gun defendant Hylton argued that when officers entered the apartment, after he had been placed under arrest, there was no danger to anyone and therefore officers exceeded the scope of their warrantless search when they retrieved his gun. The government countered, arguing that "[the girlfriend] gave implied consent to enter and recover the firearm by summoning police to her apartment and providing them with the precise location of the firearm." *Id.* at 785.

The *Hylton* Court found that the girlfriend had authority to give consent to search her apartment and that her words and actions—specifically telling them where the gun was located—were such that it could be inferred that she gave police authority to enter her apartment and retrieve the gun. The Court held that the undisputed facts supported the inference that the girlfriend gave consent, and there was no need to address the protective sweep theory. *Id.* at 787, 2003 U.S. App. LEXIS 23575 at 11-12.

Just as in *Hylton*, the facts in the instant case support the trial court's conclusion that implied consent to search was given. Once defendant's mother told police that defendant had a gun in the residence, and defendant confirmed the presence of a gun in the residence and where it could be located, the deputies were justified in entering the residence and seizing the weapon. *See State v. Harper*, 158 N.C. App. 595, 603, 582 S.E.2d 62, 67-68 (2003) (holding that a defendant's nonverbal conduct after engaging in conversation with police and allowing them to enter a residence constituted consent to search and seize property therein), *disc. review denied*, 357 N.C. 509, 588 S.E.2d 372 (2003). Further, "valid consent may be given by any one of the co-habitants of a premises, even though no other co-habitant has consented." *Hylton*, 349 F.3d at 785. Moreover, based on the specific facts of this case, defendant and his mother, both co-habitants of the residence, gave consent through their words and actions for the officers to enter the residence and seize the weapon. Finally, just as in *Hylton*, in the present case because we have held that implied consent existed to justify the search and seizure, we need not address whether the officers were entitled to conduct a protective sweep.

Therefore, the trial court did not err in denying defendant's motion to suppress evidence. Accordingly, this assignment of error is overruled.

II

[2] Next, defendant argues the trial court erred in allowing defendant to discharge his attorney and proceed pro se in the middle of trial when the trial court failed to make proper inquiries pursuant to N.C. Gen. Stat. § 15A-1242 before releasing defendant's counsel. We agree.

The Sixth Amendment to the United States Constitution provides in part that the accused has the right to have "Assistance of

Counsel" for his defense. U.S. Const. amend. VI. Criminal defendants also have the right to represent themselves. Our North Carolina Supreme Court stated the following in *State v. Moore*, 362 N.C. 319, 661 S.E.2d 722 (2008):

> [The law] has long recognized the state constitutional right of a criminal defendant to handle his own case without interference by, or the assistance of, counsel forced upon him against his wishes. However, [b]efore allowing a defendant to waive in-court representation by counsel . . . the trial court must insure that constitutional and statutory standards are satisfied. Once a defendant clearly and unequivocally states that he wants to proceed *pro se*, the trial court . . . must determine whether the defendant knowingly, intelligently, and voluntarily waives the right to in-court representation by counsel.

*Id.* at 321-22, 661 S.E.2d at 724 (internal citations and quotations omitted).

North Carolina General Statutes section 15A-1242 provides:

> A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant: (1) [h]as been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled; (2) [u]nderstands and appreciates the consequences of this decision; and (3) [c]omprehends the nature of the charges and proceedings and the range of permissible punishments.

N.C. Gen. Stat. § 15A-1242 (2007).

Here, the trial court had the following exchange with defendant:

THE COURT: All right, yes sir.

MR. McLEOD: Yes, your Honor. I talked this matter over with my attorney and I did ask—told her I want to proceed.

THE COURT: So you want to discharge her and proceed on your own?

MR. McLEOD: Proceed on my own and keep her on stand by to help me in any way—any way that she can.

THE COURT: All right.

MS. BAKER-HARRELL: And your Honor, if you can just give me about three minutes. I'm trying to give him all of the paperwork, all the discovery and everything that I have.

THE COURT: All right, I'll permit it. Highly unusual, but I'll permit it.

The record shows that the trial court made no inquiry as to defendant's understanding of his right to counsel, his understanding of the charge and possible punishment, or the consequences of proceeding without counsel. N.C. Gen. Stat. § 15A-1242 makes it clear that the defendant must be advised of the aforementioned inquiries before being allowed to proceed *pro se.* While defendant made it clear he wanted to proceed on his own and "keep [counsel] on stand by to help [him]," the trial court had an obligation to conduct the inquiry pursuant to N.C. Gen. Stat. § 15A-1242 prior to allowing defendant to proceed. *See State v. Stanback*, 137 N.C. App. 583, 586, 529 S.E.2d 229, 230-31 (2000) (holding a new trial was warranted based on the trial court's failure to comply with § 15A-1242 because "neither the statutory responsibilities of standby counsel . . . nor the actual participation of standby counsel . . . is a satisfactory substitute for the right to counsel in the absence of a knowing and voluntary waiver."). Further, the State, acknowledging that it is unable to distinguish the facts of the instant case from the facts set forth in authority cited by defendant, also acknowledges that error was committed and defendant is entitled to a new trial. *See State v. Moore*, 362 N.C. 319, 661 S.E.2d 722 (2008) (holding a new trial was warranted where the trial court did not make an adequate determination pursuant to N.C. Gen. Stat. § 15A-1242 whether defendant's decision to proceed pro se was knowingly, intelligently, and voluntarily made).

AFFIRMED in part and remanded for NEW TRIAL.

Judges CALABRIA and ELMORE concur.