STATE OF NORTH CAROLINA
v.
DAVID QUINTON BIGGS, SR., Defendant.
No. COA08-1170
Court of Appeals of North Carolina
Filed: July 7, 2009.
This case not for publication
Roy Cooper, Attorney General, by Jay L. Osborne, Assistant Attorney General, for the State.
Bowen and Berry, PLLC, by Sue Genrich Berry, for defendant-appellant.
MARTIN, Chief Judge.
Defendant David Quinton Biggs, Sr. was charged in bills of indictment with attempted first degree murder, assault with a deadly weapon with intent to kill inflicting serious injury, malicious assault in secret, and common law robbery, following an attack on his former girlfriend, Avilla Bonner. He appeals from a judgment entered upon his conviction by a jury of assault with a deadly weapon with intent to kill inflicting serious injury and malicious assault and battery in secret with a deadly weapon with intent to kill. We find no error.
The State's evidence at trial tended to show that an assailant attacked Ms. Bonner outside her Edenton, North Carolina, home at approximately 3:00 a.m. on 10 June 2005. As she approached her vehicle, the attacker struck her on the head approximately six to eight times with a large stick or iron pipe. Although she was not able to identify her assailant, Ms. Bonner could tell that he was a male and was able to describe his clothing. Edenton police subsequently discovered an abandoned Suzuki Sidekick vehicle parked approximately a block and a half from where the assault occurred. The vehicle identification number identified the vehicle's owner as Roman Biggs, but the license tag on the Suzuki was registered to defendant's Eagle Talon sports coupe. Edenton officers had previously observed the Suzuki parked at defendant's residence. The Suzuki's hood was still warm, suggesting it had been recently driven. Based on this information, Edenton police detective Dwight Rawlins obtained an arrest warrant for defendant.
Later that morning, Edenton police chief Gregory Bonner and Detective Rawlins, accompanied by additional Edenton police officers, drove to defendant's home to serve the arrest warrant. As the police approached the residence, they observed defendant leaving his driveway in a Cadillac pickup truck towing a trailer loaded with lawnmowers. The police executed a traffic stop, arrested defendant and placed him in a squad car.
As the traffic stop occurred approximately two hundred yards from defendant's home, Chief Bonner drove defendant's vehicle the short distance back to his driveway rather than leave it on the side of the road. Defendant was also transported back to his residence in a police vehicle. Detective Rawlins then removed defendant from the squad car and asked for consent to search his home. Defendant initially denied consent, but when Detective Rawlins informed him that the police would return that afternoon with a search warrant, defendant consented to the search since his son would return home for lunch around noon and defendant stated that he did not want his son to see police searching the home. Defendant later reiterated his consent to Chief Bonner. During the search, police discovered clothing consistent with Ms. Bonner's description of her attacker's apparel. Subsequent lab tests confirmed that blood on the clothing recovered from defendant's home matched a blood sample collected from Ms. Bonner. Defendant offered no evidence.
By his first two assignments of error, defendant contends that the trial court erred in denying his pre-trial motion to suppress evidence obtained in the search of his home. He first assigns error to the following findings of fact made by the trial court:
3. That the defendant was asked to return to his home and was driven there by police[.]
. . . .
14. That the defendant conversed with Detective Rawlins before consenting [to the search of his home] and weighed his options[.]
The trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if that evidence is conflicting. See State v. Haislip, 362 N.C. 499, 500, 666 S.E.2d 757, 758 (2008) (citing State v. Buchanan, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001)). As the trial judge is present during examination, he is in a better position to observe and pass judgment on the demeanor and credibility of the witnesses than is an appellate court reviewing a written transcript of the testimony. See State v. Smith, 278 N.C. 36, 41, 178 S.E.2d 597, 601 (1970).
Here, defendant correctly points out that there is no evidence in the record that the police specifically "asked" defendant to accompany them back to his home. However, the record does indicate that some communication took place between defendant and police about returning to his home, although the exact language of that communication does not appear in the record. Detective Rawlins testified that he told defendant he intended to return defendant to his residence to ask for his consent to search his home. Further, the police drove defendant's truck and trailer the short distance back to his property rather than leave it on the side of the road, a decision defendant did not protest. Thus, we conclude there is competent evidence to support Finding of Fact 3.
Defendant further argues that the trial court erroneously concluded that defendant "weighed his options" before consenting to a search of his home. Specifically, defendant claims that Detective Rawlins' correct and legal statement that the police could search his home immediately with consent or return later with a search warrant did not leave him with any meaningful options to weigh. Defendant's contention that the lack of an option favorable to his interest is inconsistent with the competent evidence standard is erroneous. See Haislip, 362 N.C. at 500, 666 S.E.2d at 758. Defendant had two optionseither consent to the search now or wait for the police to procure a search warrant and return later, which could coincide with his son arriving home for lunch. After weighing these two options, defendant decided that he did not want police searching his home with his son present and gave Detective Rawlins his consent. Defendant reiterated his consent to Chief Bonner before the search commenced. Therefore, we conclude that the trial court's Finding of Fact 14 is supported by competent evidence. Accordingly, defendant's first assignment of error is overruled.
In addition, defendant argues that (1) the evidence seized during the search of his home should have been excluded because the officer's mere police presence on his property, prior to his consent to search, constituted an illegal warrantless search and (2) defendant's consent, regardless of the legality of the police presence on his property, was involuntary. Again, we disagree.
It is well established that the curtilage is part of the home itself and entitled to Fourth Amendment protection. See State v. Rhodes, 151 N.C. App. 208, 214, 565 S.E.2d 266, 270 (2002) ("[C]urtilage of the home will ordinarily be construed to include at least the yard around the dwelling house as well as the area occupied by barns, cribs, and other outbuildings.") (quoting State v. Frizelle, 243 N.C. 49, 51, 89 S.E.2d 725, 726 (1955)). Nevertheless, police officers may enter the curtilage of private property without a warrant to ask whether the occupant is willing to answer questions or consent to a search of the premises. See State v. Wallace, 111 N.C. App. 581, 585, 433 S.E.2d 238, 241 (1993) (citing State v. Prevette, 43 N.C. App. 450, 455, 259 S.E.2d 595, 599-600 (1979), appeal dismissed and disc. review denied, 299 N.C. 124, 261 S.E.2d 925, cert. denied, 447 U.S. 906, 64 L. Ed. 2d 855 (1980)). Therefore, mere police presence on private property does not violate the Fourth Amendment unless the police, without a warrant or consent, begin prying into a hidden place for something that is concealed. See State v. Young, 186 N.C. App. 343, 352, 651 S.E.2d 576, 582 (2007) (citing State v. Raynor, 27 N.C. App. 538, 540, 219 S.E.2d 657, 659 (1975)).
Defendant argues, without citing authority, that because he had "manifested his intent to exclude strangers" by sealing his property with a fence and "no trespassing" signs, he has effectively circumvented the Wallace rule. Defendant does not contend that police were actually conducting a search before they obtained his consent, only that their mere presence constituted an illegal search. However, the record is devoid of any evidence that any Edenton police officer ever engaged in any action other than returning defendant's vehicle to his property and asking for his consent to search. Consequently, defendant has failed to show that the police illegally searched his property prior to obtaining his consent.
Finally, we need not address defendant's argument that an open air carport that shares a common roof line with defendant's residence should be considered part of the home rather than the curtilage and thus receive additional Fourth Amendment protection. See generally Payton v. New York, 445 U.S. 573, 589-90, 63 L. Ed. 2d. 639, 653 (1980). As the police did not illegally search defendant's home or curtilage before they obtained his consent, this distinction is immaterial to the instant case.
Alternatively, despite twice consenting to the search, defendant argues that his consent to the search was involuntary. Warrantless searches and seizures are legal if an individual voluntarily consents to the search. See N.C. Gen. Stat. §§ 15A2-21, 15A-222 (2007). This Court looks at the totality of the circumstances to determine whether consent was voluntarily given. See State v. Houston, 169 N.C. App. 367, 371, 610 S.E.2d 777, 781 (2005) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226, 36 L. Ed. 2d 854, 862 (1973)). Defendant cites several circumstances a court may consider when determining whether consent was voluntarily given. See, e.g., United States v. Elie, 111 F.3d 1135, 1146 (4th Cir. 1997) (holding that the absence of a Miranda warning is a factor to consider when assessing voluntariness); United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996) (noting that courts should consider factors such as age, education level, intelligence, conduct of the encounter, and the duration, location and consequences of the encounter). In the instant case, the only factors defendant asks this Court to consider are that (1) defendant was handcuffed when he granted consent, and (2) he had not been read his Miranda rights prior to granting consent to search. Neither factor renders defendant's consent involuntary.
We have previously upheld a defendant's voluntary consent to search his bedroom even though he was handcuffed and had not been read his Miranda rights. See Houston, 169 N.C. App. at 369, 371, 610 S.E.2d at 779, 781 (noting that defendant was "obviously in custody" when police obtained voluntary consent). Custody is irrelevant, as Miranda warnings are inapplicable to search and seizure consent. See State v. Cummings, 188 N.C. App. 598, 602, 656 S.E.2d 329, 332 (2008) (citing State v. Frank, 284 N.C. 137, 142, 200 S.E.2d 169, 173 (1973)). As defendant cites no other factors that would render his consent involuntary, the trial court correctly concluded that, under the totality of the circumstances, defendant's consent was voluntary. Accordingly, defendant's second assignment of error is overruled.
By his third assignment of error, defendant contends the trial court erroneously admitted State exhibit 7(d), a sexual assault evidence collection kit taken from the victim at the hospital, because (1) the State failed to properly authenticate it pursuant to N.C.G.S. § 8C-1, Rule 901, and (2) admission of the evidence violated defendant's Sixth Amendment right to confront his accuser. We disagree.
The appropriate standard of review of the trial court's decision to admit or exclude evidence is abuse of discretion. See Williams v. Bell, 167 N.C. App. 674, 678, 606 S.E.2d 436, 439 (2005) (citing Carrier v. Starnes, 120 N.C. App. 513, 519, 463 S.E.2d 393, 397 (1995)). The trial court abuses its discretion only when its ruling is "so arbitrary that it could not have been the result of a reasoned decision." Id.
Defendant first argues that the exhibit 7(d) was not properly authenticated because the State called only one of two police detectives present when the sample was taken and did not call the nurse who actually drew the blood. Authentication may be accomplished through the testimony of a witness with knowledge that the evidence is what the proponent claims it to be. See N.C. Gen. Stat § 8C-1, Rule 901(b)(1) (2007). Further, the person who draws a blood sample need not testify in order to establish authenticity. See State v. Grier, 307 N.C. 628, 632, 300 S.E.2d 351, 354 (1983).
Here, the State properly authenticated the evidence through Detective Rawlins' testimony. He testified that he was present in the room when the blood sample was taken, immediately received the evidence from the other detective present who signed for it, kept it secured in a locker in his office, and personally transported it to the State Bureau of Investigation crime lab for analysis. Detective Rawlins' testimony established that he had knowledge of the exhibit's contents as he took possession of the evidence almost immediately after he observed the nurse collect it. His testimony satisfies the requirements of Rule 901 and was sufficient to authenticate the evidence. Consequently, defendant's argument is contradictory to the plain language of North Carolina Rule of Evidence 901 and established precedent. Accordingly, the trial court did not abuse its discretion in admitting State exhibit 7(d).
Defendant next attempts to argue that in not calling all individuals who were present when the victim's blood was collected, the State violated the confrontation clause of the Sixth Amendment. Defendant argues that admitting exhibit 7(d) violates the "spirit and letter" of Crawford v. Washington, 541 U.S. 36, 158 L. Ed. 2d 177 (2004) (holding that testimonial evidence of unavailable witnesses may not be admitted unless the opposing party had a previous opportunity to cross-examine). As established above, the State properly offered detective Rawlins' testimony to authenticate this evidence. No additional authentication was necessary. Accordingly, this assignment of error is overruled.
In a related assignment of error, defendant argues the trial court erred when it refused to permit defendant to introduce evidence that one of the officers present when the victim's blood was collected had been convicted of a criminal offense involving the handling of evidence in an unrelated case. Evidence of a criminal conviction of a witness may be admitted during cross-examination for the purposes of attacking that witness's credibility. See N.C. Gen. Stat § 8C-1, Rule 609(a) (2007). However, the officer was not called as a witness by either side and defendant did not formally offer the evidence before resting his case. The evidence was not relevant to the instant case and the trial court properly excluded it. Consequently, this assignment of error is overruled.
Finally, defendant contends the trial court erred as a matter or law, or in the alternative committed plain error (1) by failing to comply with N.C.G.S. § 15A-1235(c) by issuing an additional instruction to the jury following a note from the foreperson stating "I need to speak with someone regarding a juror problem," and (2) by coercing the verdict by issuing this additional instruction. However, defendant did not properly preserve his right to appeal this issue. Defendant's failure to object to a jury instruction waives his right to appeal as a matter of law. See N.C.R. App. P. 10(b)(4). As defendant did not object to this instruction, he cannot raise this issue on appeal. Id. Thus, in order to prevail, defendant can only argue that the trial judge committed plain error. Id. Nevertheless, defendant failed to argue plain error. Although he does use the term "plain error" in his fifth assignment of error, a bare "assertion of plain error, without supporting argument or analysis of prejudicial impact, does not meet the spirit or intent of the plain error rule." State v. Cousar, __ N.C. App. __, __, 660 S.E.2d. 902, 905 (2008) (quoting State v. Cummings, 352 N.C. 600, 636, 536 S.E.2d 36, 61 (2000)). In order to establish plain error, defendant has the burden of showing (1) that a different result would have been reached but for the error or (2) that the error was so fundamental as to result in a miscarriage or justice of a denial of a fair trial. See Cummings, 352 N.C. at 636, 536 S.E.2d at 61 (2000) (citing State v. Bishop, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997)). Defendant makes no such argument in his brief and thus fails to argue plain error. Consequently, this assignment of error is dismissed.
No Error.
Judges CALABRIA and STEELMAN concur.
Report per Rule 30(e).